**RECEIVED**

JUL 2 5 2013

**DEBORAH S. HUNT, Clerk**

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

SHERYL TAYLOR )
    Appellant )
        v. ) APPEAL NO. 13-5585
         )
DEPARTMENT OF TREASURY )
    Appellee )

---

## APPELLANT'S REPLY TO LETTER DATED JULY 22, 2013 OF APPELLEE OR MOTION FOR LEAVE TO REPLY TO LETTER

The Appellant respectfully files this reply or motion for leave to reply to the Court regarding the letter dated July 22, 2013 of the defendant/appellee. The United States Court of Appeals for the Sixth Circuit reversed the District Court's order that granted summary judgment for civil action 08-cv-2735. The United States Court of Appeals for the Sixth Circuit remanded the civil action to the District Court on January 2, 2013. The appeal number was 11-6122.

Discovery and depositions have been completed. The next step is pre-trial conference and trial. The District Court denied the Appellant's motion for an appointment of counsel on February 27, 2013, April 30, 2013 and May 2, 2013. (Doc. 112, 131 & 134.) Final judgment without counsel will cause irreparable harm to the Appellant. The Appellant is seeking relief before the District Court for a civil action based on Title VII of the Civil Rights Act of 1964.

The Appellant filed a motion on April 26, 2013 to stay all proceedings at the District Court because the Appellant timely filed an appeal. (Doc. 128.) The

2

Appellant filed a notice of an appeal on April 26, 2013. (Doc. 129.) On April 30, 2013, the District Court denied the Appellant's motion to stay all proceedings. (Doc. 131.) On May 2, 2013, the District Court denied the Appellant's motion to stay all proceedings. (Doc. 134.) The Appellant petitioned the Clerk at the District Court to forward the entire record to the Court of Appeals for the Sixth Circuit.

The Appellant replies to the letter of the defendant/appellee dated July 22, 2013. The Appellant does not understand the letter. The Apellant is without counsel. The defendant did oppose the motion for the Appellant's prior counsel to have access to federal funds to continue representing the Appellant. The Appellant's prior counsel did consult with opposing counsel to withdraw. The defendant/appellee has opposed the motion for the Appellant's prior counsel to have access to federal funds to continue representing the Appellant. (Doc. 123, 113, 121 & 130.)

The Appellant filed a motion for sanctions against the defendant/appellee for failing to adhere to the order of the Court compelling discovery in the form of attorney's fees for the Appellant's prior counsel. (Doc. 108.) The defendant/ appellee responded to the motion. The Appellant filed a motion to fine the defendant/appellee for interfering with the attorney-client relationship of the Appellant in the form of attorney's fees. (Doc. 109.) The defendant/appellee responded to the motion. The Appellant filed a motion for the District Court to enter an order to appoint counsel by: 1. Appoint the Appellant's prior counsel with federal funds. 2. Order the defendant/appellee to appoint or assign counsel. 3. Order the Dept. of Justice to appoint or assign counsel to the Appellant.

3

The defendant/appellee did respond to the motion for counsel to withdraw. It is a fact, the defendant/appellee did not release its federal funds, equally distribute its federal funds to the Appellant's prior counsel. Nor did the defendant/appellee release, equally distribute federal funds and appoint or assign counsel to the Appellant. However, there is no federal law that gives the defendant/appellee the exclusive and sole right to the property of federal funds for legal counsel for Title VII civil actions. The defendant/appellant responded to the Court by pleading the Appellant is not entitled to federal funds to secure counsel. (Doc. 113, 121 & 130.)

The Appellant includes the various responses of the defendant/appellee regarding the motion to withdraw and attorney's fees. (Exh. A, B & C.)

The Appellant respects the Court and she comes humbly before the Court. The Appellant seeks the Court's leniency for any misunderstanding in her pleadings. The Appellant has medical issues and she is under duress. The Appellant is concern that members of a protected class cannot secure counsel with federal funds for Title VII civil actions. Yet, the defendant/appellee has secured counsel with federal funds. There is not equal justice and equal protection under the law for the Appellant. Without counsel, the interest of the Appellant is not protected.

Dred Scott v. Sandford, 60 U.S. 393 (1857) is the law of the land. Dred Scott had an appointment of counsel during his ten (10) years quest for freedom. However, the Emancipation Proclamation was signed by President Abraham Lincoln. It is an executive proclamation.

4

Fast forward to the year of 2013. Title VII of the Civil Rights Act of 1964 for federal and former federal employees that are members of a protected class in the state of TN, is litigation before a jury without counsel. Federal courts in Northern states appoint counsel to federal and former federal employees that are members of a protected class for Title VII civil actions. Federal courts in Southern states do not appoint counsel to federal and former federal employees that are members of a protected class for Title VII civil actions. Therefore, the Appellant made a First (1st) Amendment petition for access to federal funds to secure counsel for Title VII. The District Court denied the motion for access to federal funds to secure counsel for Title VII. (Doc. 112, 131 & 134.)

It is a common practice for lawyers to withdraw from representing members of a protected class for Title VII civil actions. Lawyers have made arguments for motion to withdraw as "withdrawal from this matter can be accomplished without material adverse effect on the interest of the client or insurmountable differences in the strategy that plaintiffs believe is best compared to the strategy that counsel think should be pursued." However, federal courts in Northern states review the retainer agreements to ensure the withdrawal are not improper. Federal courts in Southern states do not review retainer agreements. As a result, the plaintiff is unrepresented if there is not a substitution of counsel.

5

Author M. J. Klarman in his book <u>From Jim Crow to Civil Rights: The Supreme Court and the Struggle for Racial Equality</u> explains white lawyers in the south intentionally filed paper work incorrectly in court and intentionally failed to zealously represent their black clients due to reprisal from the white community. The author further explains a white lawyer was forced to close his law firm in the south due to the reprisal he received from the white community as a result of his successful representation for his black clients. There is a major problem for members of a protected class securing counsel for Title VII civil actions in Southern states.

Federal employers, state employers, county employers, city employers and private employers have a right to counsel for Title VII civil actions. The employer does not appear before the any court without counsel for Title VII civil actions. A review of any withdrawal of counsel for an employer, there is an immediate substitution of counsel. **Title VII cases are complex cases which is evident by the fact the employers always secure counsel.**

A review of the orders of the District Court for the withdrawal of counsel for Title VII civil actions for plaintiffs is the motion is granted and the District Court does not appoint counsel. For example, Dorothy Houston is a member of a protected class. She filed a Title VII civil action against her former employer which was Regional Adjustment Bureau. The civil action was filed before the U.S.

6

District Court for the Western District of TN; Houston v. Regional Adjustment

Bureau, 09-cv-02678 . The employment of Dorothy Houston was terminated. (Exh.

19 & 20.)Dorothy Houston was represented by three (3) TN lawyers.  Saul Belz,

Richard Fields and Andre Mathis represented Dorothy Houston. The lawyers have

a history of providing civil rights representation. All three (3) lawyers withdrew

from representing Dorothy Houston. However, Regional Adjustment Bureau

retained counsel. The interest of Regional Adjustment Bureau was protected

because it secured counsel. (Exh. 19, 20, 21, 22, 23, 24 & 25.)

Local rule of the District Court references withdrawal of counsel. Per the local

rules LR7.2 Motions of the District Court, "responses shall be filed within 14 days

after service of the motion…" (Exh. 1.)  The motions to withdraw as counsel for

Dorothy Houston were made on May 20, 2010 by Andre Mathis and Saul Belz and

December 16, 2010, by Richard Fields. (Doc. 118-30 & 118-31.) A closer

examination reveals Chief Judge Jon Phipps McCalla, for the U.S. District Court

for the Western District of TN, granted the motion for counsel to withdraw before

the fourteen (14) days time frame. Chief Judge Jon Phipps McCalla on May 24,

2010 granted the motion for Andre Mathis and Saul Belz to withdraw as counsel

for Dorothy Houston. (Doc. 118-32.) On December 17, 2010, Chief Judge Jon

Phipps McCalla granted the motion for Richard Fields to withdraw as counsel for

Dorothy Houston. (Doc. 118-33.) On January 3, 2011, Chief Judge Jon Phipps McCalla dismissed the complaint of Dorothy Houston in favor of Regional Adjustment Bureau. (Doc 118-34 & 135-1.) (Exh. 21, 22, 23, 24 & 25.) The civil action did not proceed to a jury. The Appellant includes the exhibits of the withdrawal of counsel and the order granting counsel to withdraw for Dorothy Houston v. Regional Adjustment Bureau, 09-cv-02678 as well as the Local Rule LR 7.2 Motions of the District Court. All exhibits were submitted by the Appellant to the District Court.

Federal employers have a constitutional right to counsel for Title VII civil actions. However, it is unconstitutional to have a right to counsel for a civil action. Federal employers have an entitlement to counsel for Title VII civil actions. Federal employers have an entitlement to federal funds to secure counsel. Federal employers have a constitutional right to federal funds to secure counsel. The defendant/appellee has secured counsel with federal funds. **Title VII cases are complex cases which is evident by the fact, the defendant/appellee has retained the same counsel without any trepidation of counsel withdrawing. The defendant/appellee will not appear before a jury or before any court without counsel. All legal expenses of the defendant/appellee are paid with federal funds. There is no federal law that gives the defendant/appellee the**

8

**exclusive and sole rights to the property of federal funds.**

The Appellant made a First (1st) Amendment petition for access to federal funds to secure counsel the Appellant's prior counsel.  The Appellant made a First (1st) Amendment petition for the defendant/appellee to release its federal funds, equally distribute its federal funds and appoint or assign counsel to the Appellant. The defendant/appellee has numerous lawyers on its staff. The defendant/appellee has an abundance of federals to secure counsel and its legal expenses are paid with federal funds. The District Court did not order the defendant/appellee to release its federal funds, equally distribute its federal funds and appoint or assign counsel to the Appellant or release the federal funds to the Appellant's prior counsel.

The defendant/appellee withheld federal funds, denied federal funds and denied counsel to the Appellant. The denial of federal funds is unconstitutional based on the landmark decision of the United States Supreme Court as opinionated in United States v. Windsor S. Ct., 2013 WL3196928 (2013).

The Appellant made a First (1st) Amendment petition for the District Court to order the Dept. of Justice to release its federal funds and appoint or assign counsel to the Appellant. The District Court denied the motion. (Doc. 112, 131 & 134.)

The Appellant made a First (1st) Amendment petition for the District Court to appoint or assign the Appellant's prior counsel and to enter an order the legal

9

expenses are paid with federal funds. The Appellant made a motion at the District Court for an award of attorney's fees in the form of sanctions and or a fine due to the interference of the defendant/appellee. Also, the Appellant filed a motion at the District Court for an award of attorney's fees in the form of sanctions and or a fine due to the defendant/appellee tampering with the witness which is the Appellant. The District Court denied the motion. (Doc. 112, 131 & 134.)Also, the Appellant filed a motion for attorney's fees at the District Court due to the failure of the defendant/appellee to comply with the order of the District Court regarding discovery. The District Court denied the motion. (Doc. 112, 131 & 134.)

The defendant/appellee knew the existence of the attorney-client relationship of the Appellant. The defendant/appellee had a duty not to interfere with the attorney-client relationship of the Appellant. The defendant/appellee intentionally and unjustifiably interfered with the attorney-client relationship of the Appellant. The defendant/appellant had a duty not to interfere with the attorney-client relationship of the Appellant. The defendant/appellee breached its duty. The Appellant suffered harm due to the breach.

On February 27, 2013, the Appellant filed a motion for the District Court to release the names of all lawyers on the Court's Civil Pro Bono Panel. (Doc. 110.) The order of the District Court opinionated: "the Court has no such panel." (Doc.

10

134.)

**The District Court has an obligation to have a Civil Pro Bono Panel.** Due to the interference of the defendant/appellee and the District Court's not fulfilling its obligation to have a Civil Pro Bono Panel, the Appellant is entitled to counsel of her choice as opinionated by the Fifth (5th) Circuit Court of Appeals in Sanders v. Russell, 401 F.2d 241, 12 Fed.R.Serv.2d 1395.

Therefore, the Appellant seeks or respectfully moves the Court reverse the order that granted the motion for counsel to withdrawal. Should the Court not reverse the order that granted the motion for counsel to withdraw, the Appellant respectfully moves the Court to enter an order for the defendant/appellee to appoint or assign counsel to the Appellant. Should the Court not order the defendant/appellee to appoint or assign counsel through any of the numerous lawyers on its staff or through any lawyer, the Appellant respectfully moves the Court to enter an order for the U.S. Dept. of Justice to appoint or assign counsel to the Appellant. The Appellant respectfully moves the Court to enter an order for the defendant/appellee to release its federal funds and equally distribute its federal fund for the sole purpose of the Appellant securing counsel.

**The order that granted the motion for counsel to withdraw was not in the interest of justice, was prejudicial to the Appellant and it had a material and adverse effect on the interest of the Appellant. The order that granted the motion to withdraw did not protect the interest of the Appellant.**

11

The Appellant was denied counsel by federally funded legal aid programs in TN which are Memphis Area Legal Services, Inc., West TN Legal Services, Inc., Legal Aid of East TN, Legal Aid Society of Middle TN and the Cumberlands, and the Community Legal Center. Numerous TN lawyers advised the Appellant, they do not take cases against federal agencies.

Last, the Appellant seeks full faith and credit of the case law of Sophia Shore v. Federal Express Corporation, 81-cv-2402, before the U.S. District Court for the Western District of TN.  If it pleases the Court, the opinion of U.S. Magistrate Judge James Allen on August 21, 1984, for the U.S. District Court for the Western District of TN, is precedent setting.  He opinioned Sophia Shore could not litigate a Title VII civil action pro se. U. S. Magistrate Judge James Allen for the U. S. District Court for the Western District of TN opinionated two (2) times in his findings for Sophia Shore v. Federal Express Corporation, 81-cv-2402, "IT IS CLEAR THAT MS. SHORE COULD NOT HAVE HANDLED THIS PRO SE….THIS COULD NOT HAVE BEEN HANDLED BY MS. SHORE PRO SE."(Doc. 123-7 & 137.)

On September 15, 1998, Sophia Shore was awarded attorney's fees in the amount of $65, 000.00 based on her motion to compel and sanctions against Federal Express Corporation. (Doc. 114, 123-14.)  The District Court, not a jury, found Federal Express Corporation discriminated against Sophia Shore. Sophia Shore was awarded $157, 829.00 based on a bench verdict. (Doc. 114, 123-15 & 137.) The Appellant is similarly situated as Sophia Shore. The Appellant includes a

12

portion of the record of Sophia Shore's award of attorney's fees, cost, etc. Sophia

Shore is a white citizen. (Exh. D, G, L & 2.) Sophia Shore was not denied

attorney's fees. The Appellant seeks attorney's fees as Sophia Shore.

The Appellant seeks full faith and credit regarding the case law of Pagana-Fay

v. Washington Suburban Sanitary Com'n *797 F.Supp. 462 (1992),* Gilardi v.

Schroeder 672 F.Supp.1043 (1986), James Henders v. HHGregg Appliances, Inc.,

12-cv-1147, Fogg v. Gonzales, 94-cv-02814, Sanders v. Russell, 401 F.2d 241, 12

Fed.R.Serv.2d 1395 and United States v. Windsor S.Ct., 2013 WL3196928 (2013).

All case laws cited by the Appellant resulted in an award of attorney's fees for the

plaintiffs and counsel was granted or acquired before final judgment.

Last, the Appellant submits a portion of the record of Title VII civil actions

filed before the U.S. District Court for the Western District of TN which federal

and former federal employees that are members of a protected class were granted

informa pauperis but denied counsel. (Exh. 100, 200, 300, I & X.) Also, the

Title VII civil actions were dismissed in favor of the federal employer. In addition,

the U.S. Attorney's Office for the Western District of TN represented the federal

employer and did not withdraw as counsel. The U. S. Attorney's Office for the

Western District of TN was instrumental in having four (4) Title VII civil action of

Sherry Shaw dismissed in favor of the U.S. Postal Service. (Exh. 400-1 & 500)

13

Federal employers are not denied counsel. The federal employer was not denied

access to federal funds.

Sherry Shaw is an employee with the U.S. Postal Service. She has a monthly

income of $1,896.38. Sherry Shaw was granted informa pauperis for civil action

Sherry Shaw v. John E. Potter, U.S. Postmaster General, 06-cv-2897. Sherry Shaw

was granted informa pauperis for civil action, Sherry Shaw v. John E. Potter, U.S.

Postmaster General, 06-cv-2593. Sherry Shaw was granted informa pauperis for

civil action Sherry Shaw v. John E. Potter, U.S. Postmaster General, 07-cv-2856.

Sherry Shaw was seeking relief based on Title VII. Sherry Shaw advised the Court

lawyers in Memphis, TN declined to represent her even though she is a current

employee with the U.S. Postal Service. Sherry Shaw was denied counsel on

January 8, 2007 by Judge Bernice Donald; August 3, 2007 by Judge Daniel Breen,

and January 14, 2008 by Judge Bernice Donald. Judge Bernice Donald and Judge

Daniel Breen did not advise Sherry Shaw the Court does not have a Civil Pro Bono

Panel. On June 16, 2009, Judge Bernice Donald dismissed all civil actions filed by

Sherry Shaw on summary judgment in favor of the U.S. Postal Service. Sherry

Shaw is a member of a protected class.

Michael Tate was granted informa pauperis. The employment of Michael Tate

was terminated and he did not show any income on his affidavit in support of

14

motion for an appointment of counsel. Michael Tate was seeking relief based on

Title VII for civil action Michael Tate v. John E. Potter, U.S. Postmaster General,

07-cv-2595. Michael Tate advised the Court the lawyers in Memphis, TN declined

representation and will not take cases against federal agencies. Michael Tate

denied counsel on November 15, 2007 by Judge Jon Phipps McCalla. Judge Jon

Phipps McCalla did not advise Michael Tate the Court does not have a Civil Pro

Bono Panel. On May 14, 2009 Judge Jon Phipps McCalla dismissed the civil

action of Michael Tate in favor of the U.S. Postal Service. Michael Tate is a

member of a protected class.

Jean Sims v. Robert E. Rubin, Secretary of the Treasury and National Treasury

Employees Union, 95-cv-02483, was granted informa pauperis even though she is

an employee with the Department of Treasury. The employment of Jeans Sims was

not terminated. Jeans Sims was granted informa pauperis on June 21, 1995 by U.S.

Magistrate Judge Diane K. Vescovo. On June 21, 1995, Jeans Sims filed a motion

for an appointment of counsel. On August 8, 1995, U.S. Magistrate Judge Vescovo

denied the motion for an appointment of counsel. On September 14, 1995, Jean

Sims filed a motion for an appointment of counsel. On September 22, 1995, U.S.

Magistrate Judge Vescovo denied the motion for an appointment of counsel. U.S.

Magistrate Judge Vescovo did not advise Jean Sims the Court does not have a

Civil Pro Bono Panel. The Title VII civil action of Jean Sims was dismissed on March 25, 1996 in favor of the federal employer and judgment was entered on March 27, 1996. The Appellant has included exhibits of Sherry Shaw, Michael Tate and Jean Sims which were before the District Court.

Congress did intend the equal appropriation of federal funds to secure counsel for federal and former federal employees in Northern states and Southern states for Title VII civil actions. Congress did intend for federal and former federal employees in the state of TN would have counsel before a jury for Title VII civil actions. Congress did intend a withdrawal of counsel requires an appointment of counsel. **Congress did intend federal courts in Southern states would have an obligation to have a Civil Pro Bono Panel**. Congress did intend appropriation of federal funds and counsel to Plaintiffs/Appellants for Title VII civil actions based on the fact, the federal employer has secured counsel with federal funds. The defendant/appellee did oppose the motion to withdraw by not releasing and equally distribute federal funds in the form of attorney's fees for the Appellant's prior counsel.

Respectfully submitted,

Sheryl Taylor
PO Box 897
Memphis TN 38101

16

## CERTIFICATE OF SERVICE

 I, certify that a copy of the reply or motion was sent to the opposing counsel
Harriett Halmon 167 N Main St Ste 800 Memphis, TN 38103, via U.S. Mail on
day July 25, 2013.                                    _Sheryl Taylor

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHIREARL RESA TAYLOR, a.k.a. SHERYL TAYLOR, | ) ) ) | |
| Plaintiff, | ) ) | EXHIBIT A |
| vs. | ) ) | Civil No. <u>08-2735-SHM</u> |
| TIMOTHY F. GEITHNER, Secretary of the Treasury, | ) ) ) ) | |
| Defendant. | ) ) | |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
MOTIONS FOR MISCELLANEOUS RELIEF
(DOCKET NOS. 118 AND 120)**

---

In response to motions filed by Plaintiff on March 26, 2013 (Docket No. 118) and April 1, 2013 (Docket No. 120), Defendant, by and through the United States Attorney for the Western District of Tennessee, respectfully shows unto the Court the following:

Both pleadings recycle Plaintiff's contentions that she is entitled to the appointment of counsel at expense of the United States. In Docket No. 118, Plaintiff essentially rehashes verbatim arguments that she has made before. Specifically, she argues that the Court erred when it granted her former counsel's motion to withdraw before conducting a hearing. She maintains that the Court erred when it did not sanction the defendant in the form of attorney's fees for Plaintiff to employ counsel, and when the Court did not fine the defendant for obstructing justice and tampering with a witness. In Docket No. 120, Plaintiff continues her argument that she should be appointed counsel. The motion at Docket No. 120, asks several specific questions of the Court.

In response to the questions posed by Plaintiff, Defendant would endeavor to answer as follow:

EXHIBIT A

1.    The Court has not set a trial date.

2.    Defendant cannot state what date the Court will set for trial.

3.    Defendant cannot state what year the trial will be held.

4.    The motions pending on July 6, 2011 can be determined by reference to the docket sheet. In light of the specific issue that was remanded by the Court of Appeals, some of those motions may be moot.

5.    Defendant cannot answer the questions posed in No. 5 and No. 6.

At page 5 of the motion (Docket No. 120), Plaintiff asks three additional questions. Defendant's responses to those are as follows:

1.    As explained in numerous responses to Plaintiff's motions in the three cases that are pending in this Court, she is not entitled to the appointment of counsel.

2.    There is nothing in the law which supports Plaintiff's repeated contention that she is entitled to federal funds to prosecute this civil action.

3.    Again, there is no right to counsel in a civil matter.

For all of the reasons specifically expressed in Defendant's Response to Various Motions Filed by Plaintiff, filed on March 6, 2013 (Docket No. 113), Defendant would show that the claims and arguments made in the instant motion are repetitive of numerous previous motions made in this case and other cases pending in this Court. These claims and allegations have been clearly and repeatedly rejected. Plaintiff's persistence in filing verbatim motions such as the instant motions can only be intended to oppress and intimidate the Court and the defendant.

Further, once again, Plaintiff has failed to comply with the Rules of this Court which require

consultation prior to filing a motion.

                              EXHIBIT A

        Wherefore, based on the foregoing, Defendant Geithner respectfully prays the Court to

deny the instant motions and to caution Plaintiff that repetitive and frivolous filing are not

appropriate and are sanctionable.


                                Respectfully submitted,
                                Edward L. Stanton, III
                                United States Attorney

                                s/Harriett Miller Halmon (BPR #05320)
                                Assistant United States Attorney
                                167 North Main Street, Suite 800
                                Memphis, Tennessee 38103
                                Telephone (901) 544-4231
                                harriett.halmon@usdoj.gov


                        **CERTIFICATE OF SERVICE**

        I, Harriett Miller Halmon, Assistant U.S. Attorney, certify that a copy of the foregoing
was sent via U.S. Certified Mail, Return Receipt to Sheryl Taylor, P.O. Box 897, Memphis, TN
38101.

        This the 9th day of April, 2013.

                                s/Harriett Miller Halmon
                                Assistant United States Attorney


                                    3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHIREARL RESA TAYLOR, a.k.a. SHERYL TAYLOR, | ) | EXHIBIT B |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. <u>08-2735-SHM</u> |
| | ) | |
| TIMOTHY F. GEITHNER, Secretary of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO VARIOUS MOTIONS FILED BY PLAINTIFF

Defendant, Timothy F. Geithner, Secretary of the United States Department of the Treasury, hereby responds to several motions filed by Plaintiff, Docket Nos. 123, 125, 126, 127, and 128, as follows:

This case originated with a complaint against the Secretary of the Department of the Treasury on October 22, 2008. Amended Complaints were filed on January 20, 2009, and June 1, 2009. Defendant's motions to dismiss and for summary judgment were granted by the district court on July 6, 2011. Taylor filed an appeal. The Sixth Circuit affirmed in part and reversed and remanded in part by order dated January 2, 2013. The issue that was remanded involves plaintiff's allegation that she applied for 52 positions within the IRS and was not selected.

On February 26, 2013, Plaintiff's counsel, Barry Roseman, filed a motion to withdraw as counsel. That motion was granted by order dated February 27, 2013. Since that time, Plaintiff has filed numerous motions concerning the appointment of counsel. Most recently she has filed the following:

EXHIBIT B

1.      Motion for Miscellaneous Relief (#123) – In this motion, Plaintiff contends that the Court's decision to grant Mr. Roseman's motion to withdraw as counsel constitutes error. She alleges that she has suffered irreparable harm due to the fact that she is without counsel. She also complains that Roseman will not release all of her records. There does not appear to be any allegations in this motion to which the Defendant needs to respond.

2.      Motion to Strike (#125) – Again Plaintiff complains about her lack of counsel. She moves to strike Docket #121, a response that Defendant filed. There is no allegation of impropriety on the part of the Defendant that would warrant the striking of the pleading in question.

3.      Motion for Miscellaneous Relief (#126) – Plaintiff continues her complaint about her lack of counsel. She specifically moved the Court to enter an order for the court to appoint counsel to assist her at an upcoming status conference before the assigned Magistrate Judge. There does not appear to be any allegations in this motion to which the Defendant needs to respond.

4.      Motion for Miscellaneous Relief (#127) – Plaintiff alleges, without support, that the "defendant. . . interfered with her obtaining and securing counsel through Tennessee lawyers, interfered with the attorney-client relationship the Plaintiff had with prior counsel,. . ." (P. 4). She also alleges that the "defendant intentionally, willfully and recklessly obstructed justice and impeded the judicial process because of this lawsuit." (Id.) That allegation is without any support in the record and none in fact. Finally, she alleged that the defendant breached its duty which has resulted in irreparable harm to her. Plaintiff does not specify what duty or how it was breached. Plaintiff then moved for an order requiring the defendant to pay all filing fees that

EXHIBIT B

she incurs for this litigation and any appeals that follow.

5.    Motion to Stay (#128) -- Plaintiff complains about her lack of counsel. In this motion, Plaintiff contends that the defendant placed her in an unemployment status and at the time knew about this lawsuit, knew that the Court does not appoint counsel, and knew that her prior counsel would withdraw. She alleges that the defendant knew that none of the federally funded legal aid programs in Tennessee would represent her and knew that the Court would grant her counsel's motion to withdraw.  (pp. 4-5).  Plaintiff does not offer any support for those allegations and does not demonstrate any entitlement to relief.  Plaintiff goes on to complain about the Court's decision to grant her prior counsel's motion to withdraw.  It is unclear what it is she wants to stay.

In all of these motions, Plaintiff complains about her lack of counsel, just as she did in the four motions filed on February 27, 2013, and just as she has in other cases she has filed in this district.  Her contentions are repetitions of previously made arguments and in some instances are verbatim.  For the sake of not further cluttering the record with repetitious argument, the defendant hereby adopts by reference its arguments in Responses to Miscellaneous Motions filed on March 6, 2013 (#113).

Respectfully submitted,
Edward L. Stanton, III
United States Attorney

s/Harriett Miller Halmon (BPR #05320)
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
Telephone (901) 544-4231
harriett.halmon@usdoj.gov

3

EXHIBIT B

## CERTIFICATE OF SERVICE

I, Harriett Miller Halmon, Assistant U.S. Attorney, certify that a copy of the foregoing was sent via U.S. Certified Mail, Return Receipt to Sheryl Taylor, P.O. Box 897, Memphis, TN 38101.

This the 29th day of April, 2013.

s/Harriett Miller Halmon
Assistant United States Attorney

4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHIREARL RESA<br>TAYLOR, a.k.a. SHERYL TAYLOR, | ) | EXHIBIT C |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 08-2735-SHM |
| | ) | |
| TIMOTHY F. GEITHNER, | ) | |
| Secretary of the Treasury, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S RESPONSE TO VARIOUS MOTIONS
## FILED BY PLAINTIFF

Defendant, Timonty F. Geithner, Secretary of the United States Department of the

Treasury, hereby responds to several motions filed by Plaintiff on February 27, 2013 as follows:

### BACKGROUND

Taylor filed a complaint against the Secretary on October 22, 2008.  An Amended

Complaint was filed on January 20, 2009.  On June, 1, 2009, Taylor filed a Second Amended

Complaint.  In that complaint, Taylor alleged retaliation in violation of Title VII of the Civil

Rights Act of 1964 *as amended*, 42 U.S.C. § 20003-16(a) when

> her supervisor gave negative references about her to prospective employers and when
> her supervisor violated the Department's personnel policy by verifying her employment
> with prospective employers instead of directing them to the Department's established
> automated work verifier system.

Taylor also alleged breach of a settlement agreement in another EEO complaint.  The specific

factual allegations in the Second Amended Complaint include:  1) a "Reference" dated

December 1, 2005;  2) information communicated to the Office of Personnel Management

about a three-day suspension that was the subject of a prior settlement agreement; and 3) Taylor's then immediate supervisor provided negative information to a representative of a company that Taylor had retained to conduct a fake reference check.   EXHIBIT C

The Secretary filed an answer on July 10, 2009. On December 30, 2010, the Secretary filed a Motion to Dismiss and for Summary Judgment. Taylor filed a response to the Motion to Dismiss and for Summary Judgment on January 25, 2011. The Secretary filed a reply on February 11, 2011. The district court entered an Order Granting Motion to Dismiss and Summary Judgment on July 6, 2011. Judgment was entered on the same date.

On August 3, 2011, Taylor filed a motion to alter or amend judgment. The Secretary filed a response on August 18, 2011. On August 29, 2011, the district court entered an Order denying Taylor's Motion to Amend or Alter Judgment. Taylor filed a timely notice of appeal on September 12, 2011. Briefs were filed and argument was held on October 4, 2012. On January 2, 2013, the Sixth Circuit affirmed the district court's dismissal of the breach of settlement agreement. The Court affirmed the district court's dismissal of several claims of retaliation, but reversed and remanded on plaintiff's allegations that she applied for 52 positions that she did not get.

On February 26, 2013, Plaintiff's counsel, Barry Roseman, filed a motion to withdraw as counsel. That motion was granted by order dated February 27, 2013. Plaintiff filed four motions on February 27, 2013, each involving appointment of counsel to her in these proceedings. Those motions are as follows:

1.   Motion for Sanctions – The motion alleges that the District Court does not appoint counsel through the Court's Civil Pro Bono Panel to federal employees

2

and former federal employees of African descent. She alleges obstruction of justice, tampering with a witness pursuant to 18 U.S.C. § 1512, and for not adhering to the order of the court for the motion to compel.   EXHIBIT C

2.    Motion for Miscellaneous Relief – Again, Plaintiff alleges that the District Court does not appoint counsel for persons of African descent. She further claims that she is entitled to counsel and to federal funds for counsel. Specifically, she wants the Court to order the Department of the Treasury to pay the legal fees and expenses of her former counsel Barry Roseman. She also asks the Court to fine the Secretary for placing the Plaintiff in an unemployment status which resulted in her inability to afford counsel.

3.    Motion for an Appointment of Counsel

4.    Motion Requesting the Names of Pro Bono Attorneys

### ARGUMENT

All of the motions filed on February 27, 2013, involve Plaintiff's mistaken belief that she is entitled to counsel in this civil case, whether appointed by the Court or paid for by the defendant. The plaintiff has not demonstrated any authority for the proposition that the Court can order a party to provide counsel for an opposing party. The courts of the United States have long recognized the right of self-representation. That right is guaranteed by 28 U.S.C. §1654, which provides: "In all courts of the United States the parties may plead and conduct their own cases personally or by counsel. . ." Concomitant with the right of a person to represent herself is the truth that civil litigants unable to afford counsel cannot ordinarily obtain appointment of counsel except in limited circumstances. *See Lavado v. Keohane*, 992 F.2d 601 (6th Cir. 1993).

3

Unlike criminal cases, there is no constitutional right to appointment of counsel in a civil case.

*Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002). As the Sixth Circuit has noted,

EXHIBIT C

appointment of counsel in a civil case is " a privilege that is justified only by exceptional

circumstances." *Lavado*, 992 F.2d at 606. As the Supreme Court has noted, "[I]n the absence of

legislation providing otherwise, litigants must pay their own attorney's fees." *Christiansburg*

*Garment Co. V. Equal Employment Opportunity Commission*, 434 U.S. 412, 422 (1978). As

will be discussed *infra*, Plaintiff is well aware that she is not entitled to the appointment of

counsel in this civil case.

In addition to this case, Plaintiff has filed two other cases in this district, *Taylor v. Davis*

*et al*, No. 11-3087 STA-dkv and *Taylor v. Kelley, et al*, 11-2540 JTF-dkv. Those cases were

filed *pro se*. In each of those cases, she has filed numerous motions concerning the appointment

and funding of counsel. Some motions in those cases were identical in significant respects to the

four motions filed herein. In each of those cases, Taylor has been repeatedly told that there is no

right to counsel and that repeated filings on this issue are not appropriate. In 11-2540, Plaintiff

filed numerous motions for appointment of counsel. Her first motion was denied by Judge

Donald on October 21, 2011 (Docket Entry 3). Her second motion was denied by Judge Donald

on December 13, 2011. (Docket Entry 9) Her third motion was denied by Chief Judge McCalla

on January 5, 2012. (Docket Entry 15 ) Plaintiff then filed a motion requiring the appearance of

the Attorney General of the United States on her behalf. (Docket Entry 46) That motion was

denied by Chief Judge McCalla on April 20, 2012. (Docket Entry 58) Plaintiff then took the

unprecedented view that the people whom she sued should be responsible for her counsel. She

sought to have the defendants pay for counsel just as she has in one of the instant motions.

4

(Docket Entry 73)  On September 25, 2012, Judge Fowlkes entered an order denying Plaintiff's

motions for Defendants to Appoint or Assign Counsel.  In that order, Judge Fowlkes EXHIBIT C

acknowledged that Plaintiff's motions for appointment of counsel had been repeatedly denied.

He also noted, "She has also been advised that it is inappropriate to file repeated motions on

subjects that have been addressed." (Docket Entry 90, p. 3).  Judge Fowlkes further cautioned

Plaintiff that "it is inappropriate to burden the Court with multiple motions on the same, or

similar subjects and with numerous additional documents in support of motions that have been

filed. (p. 4)

In 11-3087, Plaintiff sued Secretary Geithner, the Secretary of the United States

Department of Labor, and the Commissioner of the Tennessee Department of Employment

Security.  That lawsuit involves the decision of the Department of Employment Security

regarding the termination of the plaintiff's employment by the Department of the Treasury.  In

that lawsuit, Plaintiff filed at least three motions for the appointment of counsel.  On August 7,

2012, Judge Anderson entered an order denying her motions to appoint counsel. (Docket Entry

62)  At a scheduling conference on August 23, 2012, Magistrate Judge Vescovo explained to the

plaintiff that hundreds of persons file cases in this Court *pro se* each year and that the law

recognizes the right to do so.  (Docket Entry 86) After that scheduling conference on August 23,

2012, Plaintiff filed six motions and several other pleadings, including a motion for the

defendants to release state and federal funds for her to obtain counsel.  In both of those cases,

Plaintiff has filed numerous repetitive and frivolous motions and other pleadings, many of them

concerning her lack of counsel.

Plaintiff has been made aware by orders of four different district judges and one

5

magistrate judge that she is not entitled to have counsel appointed to her in civil cases such as

EXHIBIT C

the instant case.   Her persistence in filing these motions despite the rulings of the Court can

only be described as harassing of the parties as well as the Court in violation of Rule 11,

Fed.R.Civ.P. These filings are certainly not for any proper purpose and cause needless increases

in the cost of litigation.  These filings are not frivolous in the sense that they can be ignored by

the opposing parties and the Court.  Instead they impede the effective administration of justice

because of the time and effort required to respond and rule.  Plaintiff has also been cautioned that

repeated and frivolous filings such as the four separate motions she filed in this case on February

27, 2013, are inappropriate.

It should also be noted that, as she has proceeded in her other litigation in this court,

Plaintiff failed to abide by the Local Rule requiring consultation before filing any of the four

motions that are currently before the Court.  Routinely in 11-2540 and 11-3087, Plaintiff faxed

or mailed letters to counsel for the opposing party as her form of consultation.   She usually

gives the opposing party a deadline, usually unreasonably short,  in which to notify her in writing

whether that party opposes the proposed motion.  Plaintiff cannot be reached by telephone and

has even deleted the number she uses to fax documents so that the only way to communicate

with her is by mail.  In an order dated July 26, 2012, in case number 11-3087, Judge Anderson

instructed Plaintiff that her method of consultation does not comport with the Local Rules;

however, she persists in sending these letters.  (See letter received in the U. S. Attorney's Office

on March 4, 2013, attached as Exhibit 1) It should be noted that the letter attached as Exhibit 1

does not reference which case it addresses or specifically which motion.  Plaintiff has been

advised by the judges of this Court to familiarize herself with the rules of this Court, and she has

once again failed to comply.  In fact, she petulantly persists in refusing to abide by the Rules of

the Court, the Federal Rules of Civil Procedure and the instructions of individual judges.

EXHIBIT C

Wherefore, based on the foregoing, Defendant Geithner respectfully prays the Court to

deny the instant motions and to caution Plaintiff, yet again, that repetitive and frivolous filings

are not appropriate and are sanctionable.

Respectfully submitted,
Edward L. Stanton, III
United States Attorney

s/Harriett Miller Halmon (BPR #05320)
Assistant United States Attorney
167 North Main Street, Suite 800
Memphis, Tennessee 38103
Telephone (901) 544-4231
harriett.halmon@usdoj.gov

## CERTIFICATE OF SERVICE

I, Harriett Miller Halmon, Assistant U.S. Attorney, certify that a copy of the foregoing
was sent via U.S. Certified Mail, Return Receipt to Sheryl Taylor, P.O. Box 897, Memphis, TN
38101.

This the 6th day of March 2013.

s/Harriett Miller Halmon
Assistant United States Attorney

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 490-2008-00363 |

**Tennessee Human Rights Commission** and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)*   EXHIBIT 19 | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| Dorothy J. Houston | (901) 743-1004 | -1957 |

| Street Address | City, State and ZIP Code |
|---|---|
| 2620 Barron Ave., Memphis, TN 38114 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe
Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| REGIONAL ADJUSTMENT BUREAU, INC. | Unknown | (901) 382-0250 |

| Street Address | City, State and ZIP Code |
|---|---|
| 7000 Goodlett Farms Parkway,  Cordova, TN 38016 | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box (es).)*

☒ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☐ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER *(Specify below.)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 09-06-2006 | 11-01-2007 |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

On or about April 11, 1997, I began working for Respondent.  On or about June 27, 2006, I requested a promotion to Shift Manager.  In September 2006, My pay was reduced and I was involuntarily placed into the legal department.  On November 1, 2007, I was discharged.

Robert Wyatt, Human Resource Director, indicated that I was discharged for poor performance.  Respondent gave me no reason for not promoting me to Shift Manager, the involuntary move to a different department and reduction in pay.

I believe that I was discriminated against based on my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.  Other White employees' performance was poor, but they were not discharged.

White employees have been promoted to Shift managers without posting or advertising the position. Black employees have not been given the opportunity for promotion to Shift manager or above.  I believe I was subsequently discharged as a result of requesting a promotion.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT |
| Nov 28, 2007 | *Dorothy Houston*
SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)* |

EXHIBIT 20

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

**RECEIVED**

Dorothy J. Houston
2620 Barron Ave
Memphis TN 38114

OCT 2 2 2009

CLERK, U.S. DIST. COURT
WESTERN DIST. OF TENN

(Name of plaintiff or plaintiffs)

v.                    CIVIL ACTION NO. _____

Regional Adjustment Bureau
7000 Goodlett Farms Parkway
Cordova, TN 38016

(Name of defendant or defendants)

## COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff. Dorothy J. Houston

(name of plaintiff)

is a citizen of the United States and resides at 2620 Barron Ave

(street address)

Mphs.        U.S        TN

(city)        (country)        (state)

38114                        901 743-2891

(zip code)                (telephone number)

Revised 11/08

EXHIBIT 20

3. Defendant _Regional Adjustment Bureau Inc._
(defendant's name)
lives at, or its business is located at _7000 Goodlett Farms Parkway_
_Cordova TN 38016_ (street address)

4. Plaintiff sought employment from the defendant or was employed by the defendant at
_Plantation Rd_
_Cordova_ _U.S._ (street address) _TN_ _38_
(city)      (country)      (state)      (zip code)

5. Defendant discriminated against plaintiff in the manner indicated in paragraph 9 of this complaint on or about _03_ _11_ _2002_
(day)      (month)      (year)

6. Defendant filed charges against the defendant with the Tennessee Fair Employment Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this complaint on or about _28_ _11_ _2007_
(day)      (month)      (year)

7. Plaintiff filed charges against the defendant with the Equal Employment Opportunity Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this complaint on or about _28_ _11_ _2007_
(day)      (month)      (year)

8. The Equal Employment Opportunity Commission issued a Notice of Right to Sue, which was received by plaintiff on _23_ _7_ _2009_. (Attach a copy of the notice to this complaint.)
(day) (month) (year)

9. Because of plaintiff's  (1) _X_ race. (2) ___ color, (3) _X_ sex, (4) ___ religion, (5)___ national origin, defendant

(a) ___ failed to employ plaintiff.

(b) _X_ terminated plaintiff's employment.

(c) _X_ failed to promote plaintiff.

(d) _____

Revised 4-18-08

EXHIBIT 20

10. The circumstances under which defendant discriminated against plaintiff were as follows. *I was hired on 04/11/1997 as a collector. I was on top of the collections, and debt recovery because of my circumstances, I trained many white employees and they were promoted. The company never post a sign stating a position was available. (Here are names of some white collectors I trained. Cindy Singleton (white female) which was hired Dec 1997, then 06/1998 she was promoted to unit manager. Micheal Love I trained (male white) hired Feb 1998, was unit manager, by 08/1999. There was a (white female) Barbara Noe, which was about to be terminated. I volunteer to train her she was sent to another Dept Capital One, because of the training she received she was promoted to unit manager in the Capital One. These are just a few white people I train. Then on June 27 2006 I ask for a promotion in writing to the company gave to Steven Smith (owner). My wages was reduced my goal was increased, my earning power was limited. There are absolutely no Black women in upper management.*

11. The acts set forth in paragraph 9 of this complaint

    (a) **X** are still being committed by defendant.

    (b) _____ are no longer being committed by defendant.

    (c) _____ may still be being committed by defendant.

12. Please attach to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission, which are submitted as a brief statement of the facts supporting this complaint.

WHEREFORE, Plaintiff prays that the Court grant the following relief to the plaintiff:

    (a) _____ Defendant be directed to employ plaintiff, or

    (b) _____ Defendant be directed to re-employ plaintiff, or

    (c) _____ Defendant be directed to promote plaintiff, or,

    (d) _____ Defendant be directed to *Reimburse for raism, not promoting Black women. Not Promoting Black woman in upper management. Earning power for Africa (American Woman.*

and that the Court grant such other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

13. I would like to have my case tried by a jury. Yes ( **X** ) No ( )

*Dorothy J Houston*
SIGNATURE OF PLAINTIFF

EXHIBIT 21

## UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

DOROTHY J. HOUSTON,

      Plaintiff,

v.                                      NO.: 2:09-cv-02678-JPM-tmp

REGIONAL ADJUSTMENT BUREAU, INC.,

      Defendant.

---

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL

---

COME NOW, Saul C. Belz and Andre B. Mathis on behalf of themselves and Glankler Brown, PLLC, pursuant to Local Rule 83.1(h) of the Local Rules of the United States District Court for the Western and respectfully move this Honorable Court for permission to withdraw as counsel for Plaintiff Dorothy Houston in this cause as withdrawal from this matter can be accomplished without material adverse effect on the interests of the client. *See* Rule 1.16(b) of the Tennessee Rules of Professional Conduct. Plaintiff has been advised of this Motion, and a copy has been served upon her.

A proposed order granting Plaintiff's Motion to Withdraw as Counsel has been submitted to the Court simultaneously herewith.

EXHIBIT 21

Respectfully submitted,

**GLANKLER BROWN, PLLC**

By:     /s/Andre B. Mathis
       Saul C. Belz (#4346)
       Andre B. Mathis (#26458)

1700 One Commerce Square
Memphis, Tennessee 38103
(901) 525-1322 Telephone
(901) 525-2389 Facsimile
Primary Emails:     sbelz@glankler.com
                  amathis@glankler.com

– and –

Richard B. Fields (#4744)
688 Jefferson Avenue
Memphis, Tennessee 38105
(901) 606-3566 Telephone
(901) 432-4664 Facsimile
Primary Email:     fieldsrb@bellsouth.net

*Attorneys for Plaintiff Dorothy J. Houston*

## CERTIFICATE OF CONSULTATION

    Pursuant to Local Rule 7.2 of the Local Rules of the United States District Court for the Western District of Tennessee, the undersigned certifies that Andre B. Mathis, counsel for Plaintiff, on May 12, 2010, consulted with Jim Holt, counsel for Defendant, via e-mail, regarding the above Motion for Leave to Withdraw as Counsel. Defendant's counsel advised that Defendant does not oppose the motion to withdraw.

                s/Andre B. Mathis

2

EXHIBIT 21

## CERTIFICATE OF SERVICE

I hereby certify that on this the 20th day of May 2010, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to the following counsel of record:

James L. Holt, Jr.
Jackson, Shields, Yeiser & Holt
262 German Oak Drive
Memphis, Tennessee  38018


/s/Andre B. Mathis

EXHIBIT 22

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

DOROTHY J. HOUSTON,

     Plaintiff,

v.                              No. 2:09-cv-02678-JPM-tmp

REGIONAL ADJUSTMENT BUREAU, INC.

     Defendant.

---

## MOTION FOR LEAVE TO WITHDRAW AS COUNSEL

---

COME NOW, Richard B. Fields pursuant to Local Rule 83.1(h) of the Local Rules and respectfully move this honorable Court for permission to withdraw as counsel for plaintiff Dorothy Houston as withdrawl can be accomplished without material adverse effect on the interests of the client. See Rule 1.16(b) of the Tennessee Rules of Professional Conduct. Plaintiff has been advised of this Motion, and a copy has been served on her.

A proposed order granting Plaintiff's Motion to Withdraw As Counsel has been submitted to the Court.

                    Respectfully submitted,


                  / s/Richard B. Fields   No. 4744
                    669 Jefferson Avenue
                    Memphis, TN 38105
                    (901) 606-3566
                    fieldsrb@bellsouth.net

EXHIBIT 23

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

DOROTHY J. HOUSTON,           )
                              )
                              )
      Plaintiff,              )
                              )
v.                            )      2:09-cv-2678-JPM-tmp
                              )
REGIONAL ADJUSTMENT BUREAU,   )
INC.,                         )
                              )
      Defendant.              )

---

## ORDER GRANTING MOTION TO WITHDRAW

---

Before the Court is Andre Mathis, Saul Belz, and the law firm of Glankler Brown, PLLC's Motion to Withdraw as counsel of record for Plaintiff Dorothy J. Houston (Docket Entry 22), filed May 20, 2010.  For reasons stated in said motion, and for good cause shown, the Court GRANTS the motion.

Accordingly, Attorney Andre Mathis, Saul Belz, and the law firm of Glankler Brown, PLLC shall be removed as counsel of record for Plaintiff Dorothy J. Houston.

SO ORDERED this 24th day of May, 2010.


                    /s/ JON PHIPPS McCALLA
                    CHIEF UNITED STATES DISTRICT JUDGE

1

EXHIBIT 24

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

DOROTHY J. HOUSTON,              )
                                )
    Plaintiff,           )
                                )
v.                              )    No. 09-cv-02678-jpm-TMP
                                )
REGIONAL ADJUSTMENT BUREAU,     )
                                )
    Defendant.           )

### ORDER GRANTING MOTION TO WITHDRAW AS COUNSEL

Before the Court is the Motion to Withdraw Richard B. Fields as Counsel for Plaintiff Dorothy J. Houston. (Docket Entry ("D.E.") 35), filed December 16, 2010. The Court finds that the motion is well taken and should be granted.

IT IS THERFORE ORDERED that Richard B. Fields is withdrawn as an attorney of record for Plaintiff in this matter and shall be removed from the service list.

SO ORDERED this 17th day of December, 2010.

/s/ Jon P. McCalla
CHIEF UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EXHIBIT 25

| | |
|---|---|
| DOROTHY J. HOUSTON,<br><br>    Plaintiff,<br><br>v.<br><br>REGIONAL ADJUSTMENT BUREAU,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. 2:09-cv-02678-JPM-M1/P |

**JUDGMENT**

**JUDGMENT BY THE COURT.** This action having come before the Court for consideration, the issues having been considered, and a decision rendered,

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that, in accordance with the Order of Dismissal (Docket Entry 38), entered January 3rd, 2011, this case is DISMISSED WITH PREJUDICE.

APPROVED:


S/ JON PHIPPS McCALLA
CHIEF UNITED STATES DISTRICT JUDGE

January 3, 2011
Date

EXHIBIT 1

(b)    Lines must be double-spaced, except that quotations may be indented and single-spaced and headings and footnotes may be single-spaced. Font size (for footnotes as well as the body of the document) shall be no smaller than 12 point type.

(c)    If demand for jury trial under Fed. R. Civ. P. 38(b) and (c) of the Federal Rules of Civil Procedure is made in the complaint or answer, such demand shall be contained in the last paragraph thereof. The phrase "JURY DEMAND" shall appear immediately opposite the style of the case on the first page of the pleading and all subsequent filings.

(d)    Page limitations imposed by these Local Rules do not include cations, signature lines, and certificates of service and/or consultation.

## LR7.2
## MOTIONS

(a) <u>Filing, Service and Response.</u>

(1)    <u>Motions.</u> (See Section II(B)of the ECF Attorney User Manual (APPENDIX B) ) The Clerk shall accept for filing only those motions in civil cases that include or are accompanied by a supporting memorandum of facts and law (so identified), and (except in the case of an ex parte motion) a certificate of service of the motion and memorandum upon all other parties to the action.  Motions for Summary Judgment shall comply with LR 56.1.

(A)    All motions, except motions pursuant to Fed. R. Civ. P. 12, 56, 59 and 60 shall be accompanied by a proposed order in a word processing format sent to ECF mailbox only for presiding judge (do not sent to regular e-mail address).

(B)    <u>Consultation by Counsel.</u>  All motions, including discovery motions but not including motions pursuant to Fed. R. Civ. P. 12, 56, 59 and 60 shall be accompanied by a certificate of counsel affirming that, after consultation between the parties to the controversy, they are unable to reach an accord as to all issues or that all other parties are in agreement with the action requested by the motion.  Failure to attach an accompanying certificate of consultation may be deemed good grounds for denying the motion.

The certificate must contain the names of participating counsel and the date and manner of consultation.  The burden will be on counsel filing the motion to initiate the conference upon giving reasonable notice of the time, place and specific nature of the conference.  If an opposing counsel or party refuses to cooperate in the conduct of a conference, counsel must file a certificate to that effect, setting out counsel's efforts to comply with this rule.

EXHIBIT 1

(2)    <u>Responses.</u> The response to the motion and its supporting memorandum, unless the motion is pursuant to Fed. R. Civ. P. 12(b) and (c) or 56 (see LR 12.1(b) and LR 56.1(b)), shall be filed within 14 days after service of the motion and shall be accompanied by a proposed order in a word processing format sent to the ECF mailbox only for the judge (do not send to regular email address). Failure to respond timely to any motion, other than one requesting dismissal of a claim or action, may be deemed good grounds for granting the motion.

(b)    <u>Submission of Motion.</u> Upon the filing of a motion and the timely filing of the response, and a reply, if allowed by the Court or these Rules the motion shall be submitted to the Court for a ruling unless a hearing has been requested and granted.

(c)    <u>Reply Memoranda.</u> Except as provided by LR 12.1(c) and LR 56.1(c), reply memoranda may be filed only upon court order granting a motion for leave to reply. Such motion for leave must be filed within 7 days of service of the response.

(d)    <u>Hearing on Motion.</u> If counsel desires a hearing on the motion before the court, counsel shall request the hearing in the motion or response and shall explain why a hearing would be helpful or necessary. If the court determines that a hearing would be helpful or necessary, the Court will set the date and time of the hearing and the clerk will notify all counsel.

(e)    <u>Length.</u> Unless otherwise ordered by the Court, memoranda in support and in opposition to motions shall not exceed 20 pages in length, and reply memoranda, if permitted, shall not exceed 5 pages in length.

(f)    <u>Motions Pending on Removal.</u> When an action or proceeding is removed to this Court with pending motions on which memoranda have not been submitted, the moving party shall comply with these rules within 14 days after removal, and each party opposing the motion shall then comply with these rules.

(g)    <u>Prisoners.</u> All motions and orders to produce prisoners for testimony shall be filed with the Clerk at least 28 days prior to the date of the hearing or trial. Counsel for represented parties are responsible for filing a motion if they require prisoner attendance. In pro se cases, the Court will issue the writ compelling the attendance of prisoner parties. However, pro se parties shall be responsible for filing a motion to require the attendance of non-party prisoners. Relief from this rule may be obtained by an order of the Court.

(h)    <u>Citation of Authority and Copies of Authority.</u> Citations to authority shall be in a generally accepted citation form. Citations to any judicial or administrative decision not fully reported in eitherUnited States Reports, Supreme Court Reporter, a Federal Reporter, Federal Supplement, Federal Rules Decisions, or a South Western Reporter shall include Westlaw or Lexis citations, if available. If the decision is not available on Lexis or

CIV 31
Rev 7/82)

## JUDGMENT IN A CIVIL CASE

### United States District Court

**CASE TITLE**

Sophia Shore

v.

Federal Express Corporation

**DISTRICT**

Western District of Tennessee

**DOCKET NUMBER**

C-81-2402-M

**EXHIBIT L**

**NAME OF JUDGE OR MAGISTRATE**

Robert M. McRae, Jr.

☐ **Jury Verdict.** This action came before the Court and a jury with the judicial officer named above presiding. The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.** This action came to trial ~~or hearing~~ before the Court with the judge ~~(magistrate)~~ named above presiding. The issues have been tried ~~or heard~~ and a decision has been rendered.

### IT IS ORDERED AND ADJUDGED

that judgment be and is hereby awarded the plaintiff in the total amount

of $157,829.00, and an award of costs and attorneys' fees as shall be

determined by consent of the parties, or if no agreement is reached,

by the Court.

APPROVED:

_____
U.S. DISTRICT JUDGE



FILED
JUL 9 1984
CLERK, U. S. DIST. COURT
WESTERN DIST. OF TENN.

This document entered on docket sheet in compliance with Rule 58 and/or
79 (a) FRCP on _____7/9/84_____

62

**CLERK**

*J. Franklin Reid*
(BY) DEPUTY CLERK

**DATE**

7/9/84

FILED BY _AN_ D.C.

EXHIBIT G
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

93 FEB 9 AM 8: 44

ROBERT R. DI TROLIO
CLERK, U.S. DIST. CT.
W.D. OF TN, MEMPHIS

SOPHIA SHORE,

    Plaintiff,

VS.

No. 81-2402-M

FEDERAL EXPRESS CORPORATION,

    Defendant.

*This document entered on docket sheet in compliance with Rule 58 (a) FRCP on 2/9/93*

RULING ON FRONT PAY AND INTEREST DUE THE PLAINTIFF
FOR A PORTION OF 1988 THROUGH JUNE 30, 1992

### BACKGROUND

    This Title VII employment discrimination case was commenced in 1981. Sophia Shore, the plaintiff, charged in her complaint that she had been discharged from Federal Express Corporation (hereinafter "Fed Ex" or "defendant") on the basis of gender discrimination.

    After a bench trial, this Court found that the plaintiff had been discharged because the defendant, acting through its officers, had indulged in the age old discrimination against women based upon a double standard. Plaintiff and her paramour were both employees of the defendant during a portion of their illicit sexual affair. Ultimately, the paramour was promoted to an officer position of the defendant which included a supervisory role over the section of the company headed by the plaintiff. He undertook to terminate the affair; however, disruption ensued resulting in his retention as an officer and her discharge from the employment of the defendant.

EXHIBIT D

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SOPHIA SHORE,

    Plaintiff,

VS.

FEDERAL EXPRESS CORPORATION,

    Defendant.

No. 81-2402-H/A

---

**PROPOSED FINDINGS OF FACT, PROPOSED CONCLUSIONS OF LAW,
AND RECOMMENDED DISPOSITION**

---

Before the court is the affidavit of Richard B. Fields, attorney, seeking enforcement of his attorney's lien against plaintiff Sophia Shore. This affidavit was filed on May 26, 1995, and will be treated as a petition for enforcement of an attorney's lien. Plaintiff Sophia Shore, who now has different counsel, has contested the validity of the lien, and the amount of attorney's fees claimed.

This litigation has been in this court for a long time. On three (3) occasions, decisions of this court have been appealed to the United States Court of Appeals for the Sixth Circuit. Plaintiff has gone through five (5) lawyers (Dan Norwood and Steve Shields; Kathryn Carlyle; Everett Gibson; Gail Mathes; and Richard Fields), and presently has James F. ("Tim") Schaeffer as her attorney.

EXHIBIT D

Plaintiff Sophia Shore was, in 1987-1989, represented by
Everett Gibson, attorney of the Memphis Bar.  In 1989, Ms. Shore
received an award from this court, against defendant Federal
Express Corporation, of approximately $71,645.00.  There remained
a dispute regarding the interest on this point.

As was the case with her past attorneys, Ms. Shore became
dissatisfied with the manner in which Mr. Gibson was representing
her interests, and retained Ms. Gail Mathes of the Memphis Bar
(apparently without the initial knowledge of Mr. Gibson), in
1990.  Ms. Mathes then completely took over the representation of
Ms. Shore in this litigation.

Some time in 1990, Federal Express filed a motion in this
case to terminate Ms. Shore's front pay, arguing that she
improperly resigned from a job as executive legal secretary for
the Memphis law firm of Udelsohn, Blaylock, and Marlow.  Federal
Express's theory for this relief was that it would be
"inequitable" to be required to pay plaintiff front pay, because
her voluntary resignation from her job at the Udelsohn firm only
twelve (12) days after an order of court establishing a formula
for the payment of front pay was "in bad faith" and was a
"contempt" of court.  Apparently Federal Express, after filing
their motion to terminate front pay in 1990,  ceased making front
pay payments to Ms. Shore.

2

EXHIBIT D

Plaintiff Sophia Shore was, in 1987-1989, represented by Everett Gibson, attorney of the Memphis Bar.  In 1989, Ms. Shore received an award from this court, against defendant Federal Express Corporation, of approximately $71,645.00.  There remained a dispute regarding the interest on this award.

As was the case with her past attorneys, Ms. Shore became dissatisfied with the manner in which Mr. Gibson was representing her interests, and retained Ms. Gail Mathes of the Memphis Bar (apparently without the initial knowledge of Mr. Gibson), in 1990.  Ms. Mathes then completely took over the representation of Ms. Shore in this litigation.

Some time in 1990, Federal Express filed a motion in this case to terminate Ms. Shore's front pay, arguing that she improperly resigned from a job as executive legal secretary for the Memphis law firm of Udelsohn, Blaylock, and Marlow.  Federal Express's theory for this relief was that it would be "inequitable" to be required to pay plaintiff front pay, because her voluntary resignation from her job at the Udelsohn firm only twelve (12) days after an order of court establishing a formula for the payment of front pay was "in bad faith" and was a "contempt" of court.  Apparently Federal Express, after filing their motion to terminate front pay in 1990,  ceased making front pay payments to Ms. Shore.

EXHIBIT D

After Ms. Mathes became Ms. Shore's attorney, preparations for the hearing on Federal Express's motion to terminate began.  For various reasons (including health problems for Ms. Mathes, and some unexplained failures to appear at depositions by Ms. Mathes), the hearing on this motion was postponed on numerous occasions.

Finally, Judge McRae set a hearing in June of 1992.  Ms. Shore became convinced that Ms. Mathes was not going to be ready for this hearing, and would again be asking for a continuance. Ms. Shore also was in need of funds at the time.  Ms. Shore therefore contacted Richard B. Fields, an attorney of the Memphis Bar, in April of 1992, in a panic about her difficulties in having this hearing and her concern about its possible continuance.

Mr. Fields has been practicing law in Memphis since 1976, and specializes in civil rights litigation, representing plaintiffs.  Mr. Fields testified that he seldom is paid a fee other than by award of court and/or from a contingent fee contract with plaintiffs who hire him (with on occasion a small cash payment at the start).  Mr. Fields testified that a standard contingent fee arrangement in such cases would be 33 1/3%, up to 45%, plus expenses.  He also testified that his fees are seldom fully paid by award of court, because of the requirement that a plaintiff must prevail on all issues.

EXHIBIT D

Mr. Fields was aware that the hearing on the motion by Federal Express to discontinue payment of front pay was set in mid-June of 1992.  Nonetheless, he agreed to represent Ms. Shore.

There is a dispute about the arrangement between Ms. Shore and Mr. Fields.  No written contract was provided the court.  Mr. Fields testified that he and Ms. Shore agreed at their first conference that he would receive 1/3 of funds collected from Federal Express.  He did say that he told Ms. Shore that if the matter at issue (Federal Express's request to cancel front pay, and recovery of front pay being withheld by Federal Express) were settled immediately, other fee arrangements would be made.  Ms. Shore denies that there was an agreement at that time, and indicated that she was awaiting a written proposal from Mr. Fields regarding a fee arrangement.

A review of the letters passing between plaintiff and Mr. Fields (at least those which were filed with this court) convinces me that there was an initial agreement that 1/3 would be paid Mr. Fields from funds collected from Federal Express. However, there is no proof to assist the court in determining whether this arrangement only related to the motion by Federal Express to discontinue payment of front pay, and the recovery of past due front pay, or whether it related to the remaining years for which Ms. Shore was to collect front pay (to age 65). Further, there was some confusion about the amount to be paid if the matter were settled in a reasonably short time.

Mr. Fields thereafter, on May 18, 1992, wrote a letter to Senior District Judge Robert M. McRae, advising of his

4

EXHIBIT D

representation of Ms. Shore.  Judge McRae, who had seen four (4)

or five (5) other lawyers representing Ms. Shore, and had

experience with those lawyers having to spend time bringing

themselves up to speed, was irritated and, on May 21, 1992, wrote

a letter to Mr. Fields (Exhibit 1, evidentiary hearing of July

12, 1995).  This letter had some bite to it.

> In this letter, Judge McRae said the following:

> "I have been unable (sic) express my thoughts
> about how unreasonable Mrs. Shore's conduct has
> been with regard to her claim for front pay and at
> the same time to advise the defendant that I do
> not see how I can discontinue the payment of front
> pay even though I am certainly not going to order
> pay for her for not working. . . "

Judge McRae also advised Mr. Fields that he should not count on a

fee being awarded against Federal Express for Mr. Fields or Ms.

Mathes.

Judge McRae set a preliminary pre-hearing conference for

June 3, 1992, and Mr. Fields and Ms. Shore attended.  A review of

the transcript of this conference indicates that it was fairly

extensive (both in time and in scope).

It is fair to say that Mr. Fields was presented with a

monumental task as a lawyer.  He was required to go through all

necessary documents in a case that had been going on since 1981;

that had had at least three (3) trials at the District Court

level; that had had three (3) appeals to the Sixth Circuit Court

of Appeals; and that had a mid-June trial setting.  This was to

be done, even though Mr. Fields was first seen by Ms. Shore in

EXHIBIT D

April of 1992. Mr. Fields also was required to be fairly conversant with all the issues in this litigation at the above-mentioned conference of June 3, 1992, and deal with a judge who was somewhat put out at his client.

At this June 3, 1992 conference, Judge McRae reviewed his most recent front pay order, which, in summary, provided that Federal Express was to pay Ms. Shore the difference between the salary of a "comparable" employee at Federal Express and the salary Ms. Shore was earning as an executive secretary for the Udelsohn law firm (unless, of course, Ms. Shore found employment which would pay her more than she was earning at the Udelsohn firm). This was to be paid until Ms. Shore reached retirement age (65), unless she became disabled. Apparently this matter was to be reviewed every six (6) months, and a check issued to Ms. Shore.

Judge McRae indicated at this conference that he was strongly inclined to deny Federal Express's motion to cut off all front pay, simply because Ms. Shore had quit working for the Udelsohn law firm, and was inclined to award Ms. Shore the difference between the "comparable" and what she would have earned if she had stayed at the Udelsohn law firm. He did say, however, at this June 5, 1992, conference, that:

> "I haven't changed my thought on it (regarding defendant's motion to cut off all future front pay, and pay no back front pay for the period after Ms. Shore quit working for the Udelsohn law firm), but I will say I will go into this prepared to change my mind. . . "

Transcript of preliminary conference, pp. 36-37.

EXHIBIT D

Thus, Mr. Fields was faced with the task of defending against the motion by Federal Express to cut off future front pay, and the task of trying to recover past front pay for the period after Ms. Shore quit working for the Udelsohn law firm. It is clear that Ms. Shore could not have handled this pro se, and it is also clear that Federal Express was seriously pressing its arguments in this regard.  It is also clear that Judge McRae was quite unhappy with Ms. Shore for quitting the job with the Udelsohn law firm.

The trial of this matter consumed two (2) full days (June 18 and 19, 1992), and the transcript of these proceedings added up to 538 pages and four (4) volumes.  A reading of the transcript indicates a hotly contested hearing, with constant squabbles between counsel, and a judge heavily involved in the proceeding, making the trial difficult for both lawyers.

Further, there was a post-hearing dispute as to the language of the final judgment or order by Judge McRae.  In fact, Judge McRae, after reading the transcript of the proceedings, changed his previous oral opinion in certain material aspects, in large part after hearing from counsel for both sides.  This could not have been handled by Ms. Shore pro se.

As indicated, the trial ended on June 19, 1992, and Judge McRae, at the close of the proof, made an oral ruling, in which he denied the motion by Federal Express to cut off all front pay; continued the previous ruling under which Ms. Shore was to receive front pay based upon the difference between the "comparable" Federal Express employee and the amount Ms. Shore

7

EXHIBIT D

would have earned had she stayed at the Udelsohn law firm.  He also stated certain general principles by which he would award back front pay against Federal Express for the period from when Federal Express stopped paying Ms. Shore front pay and the time of the judgment.  Finally, Judge McRae made some observations about prejudgment interest and postjudgment interest.

As indicated, delay in the entry of a final judgment (which would result in Ms. Shore receiving payment) was caused by disputes between counsel as to the nature of Judge McRae's ruling; a delay in obtaining a transcript of these proceedings (apparently caused by a misunderstanding as to who should request this transcript); and a review of this transcript by Judge McRae, resulting in his changing his mind on certain questions regarding interest.

On February 9, 1993, Judge McRae filed his "Ruling on Front Pay and Interest Due the Plaintiff For a Portion of 1988 Through June 30, 1992".  This was the ruling that varied from his oral ruling of June 19, 1992.  It is apparent that Mr. Fields obtained a copy of this February 9, 1993 Ruling, and went over it with Ms. Shore.  On March 18, 1993, Ms. Shore wrote Mr. Fields a letter, indicating that she felt that the transcript of the June 18-19 trial contained many inaccuracies which might have led to Judge McRae's corrected ruling.  Ms. Shore requested Mr. Fields to see that these errors were corrected, and Mr. Fields allegedly refused.  Further, there is a discussion in this letter about some conversations between Mr. Fields and Ms. Shore regarding the amount of Mr. Fields' fee, indicating that there was not yet a

EXHIBIT D

meeting of the minds on the question of fees.  There is no evidence that Mr. Fields wrote Ms. Shore back, disagreeing with the contents of this letter.

Further, on March 18, 1993, Ms. Shore wrote Mr. Fields a letter, asking him to make sure that "nothing in that proposed judgment (required by Judge McRae in his Ruling of February 9, 1993) precludes me from filing an appeal".

On March 29, 1993, Ms. Shore wrote Mr. Fields a letter, asking him for documents and asking that the fee arrangement be finalized and committed to writing.  There is no evidence that Mr. Fields responded to this letter in writing.

On March 31, 1993, Ms. Shore again wrote Mr. Fields, rehashing her complaints about the inaccuracies in the transcript of the trial, resulting in alleged inaccuracies in Judge McRae's Ruling of February 9, 1993.  She also indicated in this letter that she believed that the first fee arrangement (between her and Mr. Fields) of 1/3 of any recovery, to include whatever Gail Mathes should receive, should be re-instated, and that, in return, "the errors in the findings, transcript and reinstatement of lost interest should be aggressively pursued".

At some time prior to March 31, 1993, a "Proposed Judgment" form was circulated among the lawyers for Ms. Shore and Federal Express.  There is no proof as to who originally drafted it.  It was, however, signed by counsel for Federal Express and by Mr. Fields.  There is a factual dispute as to whether Ms. Shore saw this "Proposed Judgment" before it was submitted to Judge McRae for his approval.  Mr. Fields testified that he

EXHIBIT D

mailed the "Proposed Judgment", with a cover letter, to Ms.
Shore, and discussed it with her, obtaining her approval.  Ms.
Shore testified that she did not recall seeing it prior to entry.
When pressed, she admitted that she did not know whether she had
seen it or not, but said that, if she had, it would have been in
longhand.  Ms. Shore said she had emphasized to Mr. Fields that
she wanted to see this Proposed Judgment prior to its entry.  Ms.
Shore testified that, at about that time, she was extremely
upset, and did not have all her faculties about her.  To the
extent that it may be important to the outcome of this dispute,
it is submitted that it is more credible that Mr. Fields went
over the "Proposed Judgment" with Ms. Shore prior to signing it
and submitting it to Judge McRae.

In this "Proposed Judgment", it was indicated that
"Counsel for the parties have agreed that Richard B. Fields is
entitled to $5,000.00 in attorneys fees as a result of this
hearing.  Ms. Gail Mathes may submit an attorney fee application
within 10 days".  Mr. Fields testified that this was a settlement
(as to Federal Express) of Ms. Shore's claim for an award of
attorneys fees against Federal Express.  In a supplemental
affidavit, Mr. Fields indicated that he encouraged Ms. Shore to
allow him to apply for his full fees, but Ms. Shore insisted that
he accept Federal Express's settlement offer because "she was in
desperate need of funds."  Mr. Fields also stated, in this
affidavit, that he explained to Ms. Shore that if he recovered
more fees, Ms. Shore would pay less on their contingency fee
arrangement.  Ms. Shore has filed an affidavit controverting

10

EXHIBIT D

these observations by Mr. Fields, stating that she "had no knowledge at the time that negotiations were occurring or had occurred concerning attorney fees", and denying that she ever indicated that she was being in any way "motivated by desperation for money." To the extent that this dispute needs resolution, it is submitted that the version by Mr. Fields is the more credible.

From all the testimony, it appears that Ms. Shore was, as Mr. Fields put it, "micromanaging" this litigation. It also appears that, at this time, Ms. Shore was in need of money, and was pressing to obtain money from Federal Express as a result of her success at this trial. However, it also appears that Ms. Shore was not too happy with Judge McRae's ruling, both as to the method used in calculating the salary (and increases) of the "comparable" employee, and as to the question of interest.

On April 3, 1993, Ms. Shore wrote Mr. Fields and again asked for certain documents and indicated concern that some judgment, prepared by Federal Express, might be entered by Judge McRae in such a way as to cause Ms. Shore's right to appeal to "be irrevocably lost". She also expressed dissatisfaction with Judge McRae's later Ruling, saying that some of her "hard fought victory", outlined in Judge McRae's earlier oral ruling, had been "lost in the finding".

On April 2, 1993, Mr. Fields wrote Ms. Shore and sent her a copy of the "Order and Judgment" that he had received in the mail. Judge McRae had received the "Proposed Judgment", approved by Mr. Fields and counsel for Federal Express. Apparently he did not like the language contained therein, but used it as the basis

11

EXHIBIT D

for finding that the amount of back front pay due ($85,394.00), and attorneys fees, had been agreed upon by the parties. Drafting his own Judgment, Judge McRae, on March 31, 1993, entered the same.  In this Judgment, Judge McRae stated that no prejudgment interest was awarded, but that postjudgment interest was awarded "at the rate applicable at the time of the entry of the judgment".

In Mr. Fields' letter of April 2, 1993, he indicated that it was his understanding that Federal Express was not inclined to appeal, but that he would know 30 days after entry of the judgment.  He also stated that, if there was no appeal by Federal Express, he did not think the errors Ms. Shore believed occurred would have any bearing on the case.

It is important to note that, in Mr. Fields' letter of April 2, 1993, he stated the following:

> "I accept your wish to work for one-third of the judgment and I will negotiate with Gail over her fees."

On April 5, 1993, Ms. Shore wrote Mr. Fields, confirming that she had told him the previous Saturday not to accept a check from "the plaintiff" (obviously meaning the defendant Federal Express).  Ms. Shore also advised Mr. Fields that she intended to appeal the decision of Judge McRae, and asked Mr. Fields to "be sure that (the notice of appeal) is filed before April 10, 1993 to ensure that my rights in this matter are protected".

EXHIBIT D

Mr. Fields testified that when Ms. Shore called him and indicated that she wished to appeal, he told her he thought this was crazy, because Federal Express might then appeal, jeopardizing the award she had received against them. Ms. Shore indicated to Mr. Fields that she wished to appeal the entire decision, not just the decision on prejudgment interest.

Ms. Shore was apparently dissatisfied with this advice from Mr. Fields, and deeply concerned that her appellate rights might be irretrievably lost. She therefore contacted her present lawyer, James F. ("Tim") Schaeffer, and, on April 9, 1993, Mr. Schaeffer contacted Mr. Fields regarding Ms. Shore's appeal. Mr. Fields wrote a letter to Ms. Shore on April 9, 1993, again advising her against an appeal, and indicating that he would withdraw from the case, and would assert a lien for one-third of the total award as well as out-of-pocket expenses.

There has been some unpleasantness after this time. Ms. Shore filed a disciplinary complaint against Mr. Fields. Mr. Fields has complained that Ms. Shore improperly took all of his files, including some copies of letters he wrote her, and has not returned all of them. These are, however, it is submitted, extraneous to these proceedings.

This matter was indeed appealed to the United States Court of Appeals for the Sixth Circuit, which affirmed Judge McRae in all respects except as to his refusal to award pre-judgment interest.

EXHIBIT D

Ms. Shore has taken the position that there was in fact no contract between her and Mr. Fields, and that Mr. Fields is not entitled to any fees (other than the $5,000.00 fee awarded him by the court) because he failed to adequately represent her; because Judge McRae had already decided this matter favorably to Ms. Shore prior to any of these proceedings; because he failed to submit his time records to Judge McRae and request that he award attorneys fees; and because the $5,000.00 awarded is a sufficient attorneys fee in this matter.

One question I had at the time was the effect of the settlement of $5,000.00 for attorneys fees, entered into between Federal Express and Mr. Fields. However, it seems clear from the testimony and the affidavits that this was to settle the dispute between Ms. Shore and Federal Express about the amount Federal Express was required to reimburse Ms. Shore for her attorneys fees in this aspect of the ongoing litigation.

Attorneys fees are awarded in civil rights cases against the unsuccessful defendant pursuant to 42 U. S. C. §1988(b). The aim of §1988 is to "enable civil rights plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail". Venegas vs. Mitchell, 495 U. S. 82, 86 (1990). Sec. 1988 makes the prevailing party, rather than the attorney, eligible for a discretionary award of attorney's fees. Venegas, at p. 87. It is the party's right to waive, settle, or negotiate that eligibility. Id, p. 88. Sec. 1988 controls what the losing defendant must pay, not what the prevailing plaintiff must pay his lawyer. Venegas, at p. 90.

14

EXHIBIT D

Therefore, it is submitted that the fact that Mr. Fields only received an award of $5,000.00 by the court does not prevent him from collecting an additional fee from Ms. Shore, provided that any fee to which Mr. Fields is entitled to receive from Ms. Shore is reduced by the court award. It is submitted that the credible evidence has shown that Ms. Shore insisted that her claim for attorneys fees against Federal Express be settled for the sum of $5,000.00, so that she could receive payment on the judgment.

At bottom, it is submitted, this is a dispute between a client and her attorney over whether the attorney should receive any attorney's fee out of a sum of money collected on behalf of the client, and, if so, the amount of such attorney's fee. Such a dispute should, it is submitted, be resolved by turning to the applicable State law (in this case. the law of Tennessee).

An attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception, and entered into in good faith. Peoples National Bank of Washington vs. King, 697 S. W. 2d. 344, 346 (Tenn. 1985). Further, an attorney is entitled to a lien upon the client's recovery for the amount of compensation settled upon by contract. King, at p. 347.

In a case where the parties do not have a clear understanding about the fee, the lawyer should be compensated on the basis of a reasonable fee for the services rendered. In re Estate of Davis, 719 S. W. 2d. 526, 528 (Tenn. App. 1986). A "reasonable fee" generally amounts to payment for the hours spent

EXHIBIT D

on the various matters undertaken for the benefit of the client,
at the normal hourly charge for ordinary legal services as of the
time the services were rendered. Davis, p. 529.

The rule in Tennessee is that where an attorney is
discharged without cause, he may collect either on the basis of
quantum meruit or on his contract, whichever is higher. Adams
vs. Mellen, 618 S. W. 2d. 485, 488 (Tenn. App. 1981). However,
where the client is found to have cause for discharging his
attorney, the attorney may collect either on the basis of quantum
meruit or on his contract, whichever is less. Adams, at p. 488.

Misconduct by an attorney in violation of a statute, or
acts against public policy, or in breach of an attorney's
fiduciary duty to his client, or breach of faith, or malfeasance,
may support a complete forfeiture of attorneys fees. Crawford
vs. Logan, 656 S. W. 2d. 360, 364 (Tenn. 1983). On the other
hand, it is contrary to the law to hold that any misconduct of an
attorney, whether intentional or not, whether damaging to the
client or not, automatically brings about forfeiture of his fees.
Crawford, at p. 365.

It is submitted that the proof fails to establish the
existence of a contingent fee contract between Ms. Shore and Mr.
Fields, at the time that Mr. Fields provided his services for Ms.
Shore. The material terms of the contract (i. e., for the
hearing only, or for all future proceedings; for a simple
disposition or for a contested disposition;, etc.) were not

EXHIBIT D

established.  In fact, the proof does not even establish that there was an agreement (or meeting of the minds) that Mr. Fields was entitled to 1/3 of the recovery made until _after_ the recovery was made.

In any event, it is submitted that, even if there were a contract, Mr. Fields would only be entitled to a quantum meruit recovery, since he was discharged for cause.  Ms. Shore, it is submitted, made it clear that she was contemplating an appeal, and that she wanted Mr. Fields to protect her right to do so. She later directed Mr. Fields to file a notice of appeal by April 10, 1993, and received from Mr. Fields an indication that he strongly disapproved of any appeal, causing Ms. Shore to be apprehensive that a notice of appeal might not be timely filed. The fact that Ms. Shore was mistaken as to the last date for the filing of a notice of appeal would not be relevant in this case, since her _directions_ (based upon an apparent misunderstanding) were to file by a certain date.  Further, there is no indication that Mr. Fields complied with the requests by Ms. Shore to correct the transcript or submit corrections as to the calculations of the future salary of the "comparable" employee at Federal Express.

Under these circumstances, it is submitted that Mr. Fields would be entitled only to recover on the basis of quantum meruit, unless his misconduct violated a statute, was against public policy, was in breach of his fiduciary duty to his client,

EXHIBIT D

or was a breach of faith or malfeasance, in which case he might not be entitled to collect <u>any</u> attorneys fee. <u>Crawford vs. Logan</u>, 656 S. W. 2d. 360, 364 (Tenn. 1983).

It is submitted that it is clear from the proof in this case that Mr. Fields did nothing in his relationship with Ms. Shore to justify such a finding of harmful misconduct. None of the matters complained of by Ms. Shore have been shown to have had any effect on the outcome of proceedings in the Sixth Circuit, or for that matter at the hearing before Judge McRae.

For the foregoing reasons, it is submitted that Mr. Fields is entitled to recover reasonable attorneys fees from Ms. Shore on a quantum meruit basis.

The burden of establishing what is a reasonable fee is upon the attorney claiming it, not upon the client. <u>Adams vs. Mellen</u>, 618 S. W. 2d. 485, 488 (Tenn. App. 1981).

Under the provisions of Rule 8, Rules of the Supreme Court of Tennessee, DR 2-106, <u>Tenn. Code Annot., Tenn. Court Rules</u>, factors to be considered as guides in determining the reasonableness of a fee include the following:

> "(1)  The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
>
> "(2)  The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
>
> "(3)  The fee customarily charged in the locality for similar legal services.
>
> "(4)  The amount involved and the results obtained.

18

EXHIBIT D

"(5)  The time limitations imposed by the client or by the circumstances.

"(6)  The nature and length of the professional relationship with the client.

"(7)  The experience, reputation, and ability of the lawyer or lawyers performing the services.

"(8)  Whether the fee is fixed or contingent."

The Supreme Court of Tennessee has indicated that these factors should be considered by the court in determining a reasonable attorney's fee.  <u>Connors vs. Connors</u>, 594 S. W. 2d. 672, 676 (Tenn. 1980).

In this case, factors (2) and (6) are not pertinent in assessing a reasonable fee.

This case arguably involves a contingent, rather than a fixed fee, under factor (8), and thus the amount should be larger, having in mind the chancy nature of Mr. Fields recovering <u>anything</u> for his client, and thus for himself as a fee.

Factors (5) and (7) also justify liberality in the award. Mr. Fields has much experience in cases of this sort (civil rights cases) and has acquired an expertise which is widely recognized in the local bar.  Further, when Mr. Fields came into this case, he was given very little time to get up to speed on a case which had a lengthy and complex history.

Factors (1), (3), and (4) will be dealt with together.

EXHIBIT D

Mr. Fields has filed with this court an affidavit, asserting that he spent approximately 62 hours "reviewing the previous record, meeting with my client, preparing documents for trial, and corresponding with opposing counsel". He further indicates that he spent 20 hours in preparation for, and actual trial of, the hearing which took place on June 18, 1992, and June 19, 1992. Finally, Mr. Fields claims that he spent 35 hours, from June 20, 1992, until April 5, 1993, in "meetings with Ms. Shore, corresponding with opposing counsel, negotiating the amount due Ms. Shore and attorneys fees, and reviewing the transcript of the hearing." This totals 117 hours[1] alleged to have been spent by Mr. Fields in this cause, from the time he was hired by Ms. Shore until the time he was replaced by Mr. Schaeffer.

Further, Mr. Fields indicates that his normal hourly rate for civil rights litigation, in 1992 and 1993, was $175.00, and he was in fact awarded $175.00 per hour by United States District Judge Jon Phipps McCalla in another civil rights case for work in 1993 and 1994.

The hours indicated by Mr. Fields times the hourly rate claimed would total $20,475.00.

---

[1]Mr. Fields' affidavit indicates a total of 115 hours. However, this apparently is a result of incorrect addition.

20

EXHIBIT D

The actual amount collected by Ms. Shore from Federal Express for back front pay was $85,394.00. Ms. Shore also collected $5,000.00 to be applied to her obligation to Mr. Fields for attorneys fees. Mr. Fields also contends that Ms. Shore received further economic benefit, since she is now able to receive front pay until she is 65 (i. e., until the year 2000).

Thus, Mr. Fields claims a right to quantum meruit recovery for attorneys fees in the amount of $15,475.00 (deducting the $5,000.00 already received).

It is submitted that the hours claimed (62), spent in preparing for the trial on June 18 and 19, are clearly reasonable. The possibility of lasting damage to Ms. Shore's financial future was real, and preparation was made difficult because of the relatively short time to prepare and the massive amount of materials already collected in the course of Ms. Shore's prior litigation.

It is submitted that the hours claimed (20), spent in preparation for, and actually litigating, the two (2) day trial on June 18 and 19, are also clearly reasonable. A look at the transcript of these proceedings would indicate two (2) full days of actual court time, and the other hours are reasonable.

It is submitted that the hours claimed (35), spent after this trial, until Mr. Fields was replaced by Mr. Schaeffer, seem excessive. While Ms. Shore was, as Mr. Fields testified, "micromanaging" this case, the trial was over, and the issue left

EXHIBIT D

was obtaining the entry of a final judgment and receiving payment thereunder. Therefore, it is submitted that Mr. Fields should only be allowed to claim fifteen (15) hours for this period.

This would result in a total number of hours for which Mr. Fields would be entitled to quantum meruit recovery of 97.

Mr. Fields claims that he should be entitled to recover $175.00 per hour. This was not, however, a case calling upon special expertise by Mr. Fields. Judge McRae had already indicated that he had made up his mind, subject to the possibility of being convinced otherwise. In fact, Judge McRae ruled essentially as he had indicated he was going to rule (at least on the major issues of whether Ms. Shore should be cut off entirely, and whether she should be allowed to recover back front pay). The questions involved were not particularly novel or difficult. The amount recovered was not, in comparison to other civil rights judgments, substantial, although the effects thereof later on might be said to be important.

Under these circumstances, it is submitted that an hourly rate of $150.00 would be more appropriate.

In light of the foregoing, it is SUBMITTED that Mr. Richard B. Fields, attorney, should be awarded the sum of $9,550.00 ($14,550.00 less the $5,000.00 already collected) out of the sum of $25,000.00, being held in escrow. It is further SUBMITTED that, upon payment of the sum of $9,550.00 to Mr. Fields, his lien should be DISCHARGED.

EXHIBIT D

All parties are advised that all objections to this report and recommendation must be filed within ten (10) days or such objections may be deemed waived by the District Court. Additionally, such a failure to file within ten (10) days may be treated as a waiver of the right to appeal the District Court's order hereon. <u>U. S. vs. Walters</u>, 639 F. 2d. 927 (6th Cir. 1981); <u>Patterson vs. Mintzes</u>, 717 F. 2d. 284 (6th Cir. 1983); <u>Thomas vs. Arn</u>, 474 U. S. 140 (1985); see also FED. R. CIV. P. 72(b).

Respectfully submitted this 21st day of August, 1995.

_____
JAMES H. ALLEN
UNITED STATES MAGISTRATE JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EXHIBIT 2

SOPHIA SHORE, On Behalf Of Herself
And All Others Similarly Situated,

    Plaintiff,

vs.

FEDERAL EXPRESS CORPORATION,

    Defendant.

No. 81-2402-M

## PLAINTIFF'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a civil action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq., and the Equal Pay Act, 29 U.S.C. §206 (d), in which Plaintiff seeks relief for sex discrimination to which she claims to have been subjected while employed by Defendant.   Jurisdiction of the court is properly invoked pursuant to 42 U.S.C. §2000 e - 5(f)(3) and 28 U.S.C. §§1337, 1343.

At the close of Plaintiff's proof, Defendant's Rule 41(b) motion to dismiss Plaintiff's claims under the Equal Pay Act was granted, leaving only the Title VII claims for resolution by the court.

After hearing and considering the testimony and exhibits presented by Plaintiff and Defendant, the court makes the following findings and conclusions:

### FINDINGS OF FACT

1.    Plaintiff Sophia Shore is a white female citizen of the state of Tennessee; Defendant Federal Express Corporation is a Delaware corporation with its principal place of business in Memphis, Tennessee and is an employer

CERTIFIED TRUE COPY
J. FRANKLIN REID, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE

BY
DEPUTY CLERK

EXHIBIT 100

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

SHERRY V. SHAW,

        Plaintiff,

vs.

JOHN E. POTTER,

        Defendant.

No. 07-2856-D/P

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER DENYING MOTION FOR APPOINTMENT OF COUNSEL
AND
ORDER TO ISSUE AND EFFECT SERVICE OF PROCESS

     On December 31, 2007, Plaintiff Sherry V. Shaw filed a pro se complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., along with an application seeking leave to proceed in forma pauperis. On the basis of the information set forth in Plaintiff's affidavit, the motion for leave to proceed in forma pauperis is GRANTED. The Clerk shall record the defendant as John E. Potter, in his official capacity as Postmaster General.

     Plaintiff has also filed a motion requesting appointment of counsel. Two statutes authorize a district court to request or appoint counsel for an indigent Title VII plaintiff. Twenty-eight U.S.C. § 1915(d) provides that the "court may request an attorney

EXHIBIT 100

to represent any such person unable to employ counsel."[1] Similarly, under 42 U.S.C. § 2000e-5(f)(1), "upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney." However, "[t]here is no constitutional or . . . statutory right to counsel in federal civil cases." Farmer v. Haas, 990 F.2d 319, 323 (7th Cir. 1993). Generally, a court will only appoint counsel in exceptional circumstances. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and her ability to present the claims. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir. 1985); Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 17

---

[1]    However, "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallar v. United States Dist. Court, 490 U.S. 296, 310 (1989).

2

EXHIBIT 100

(2d Cir. 1989).[2] At this stage of the proceedings, before the Court has had the opportunity to assess the strength of Plaintiff's case, the Court is unable to conclude that Plaintiff has satisfied that standard. A review of this complaint indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel at this time. The motion for appointment of counsel is DENIED.

It is ORDERED that the Clerk shall issue process for Defendant and deliver said process to the marshal for service. Service shall be made on Defendant pursuant to Fed. R. Civ. P. 4(i)(2)(A). All costs of service shall be advanced by the United States.

It is ORDERED that Plaintiff shall serve a copy of every further document filed in this cause on the attorney for Defendant or on Defendant if he has no attorney. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall familiarize herself with the Federal Rules of Civil Procedure and the local rules of this Court.

Plaintiff shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these

---

[2] The Second Circuit has elaborated: "Courts do not perform a usefu service if they appoint a volunteer lawyer to a case which a private lawyer woul not take if it were brought to his or her attention. Nor do courts perform socially justified function when they request the services of a volunteer lawye for a meritless case that no lawyer would take were the plaintiff not indigent. _Id._

3

EXHIBIT 100

requirements, or any other order of the Court, may result in this

case being dismissed without further notice.

IT IS SO ORDERED this 14th day of January, 2008.


s/ Bernice B. Donald
BERNICE B. DONALD
UNITED STATES DISTRICT JUDGE

4

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_Sherry V. Shaw_
Plaintiff,

vs.

_John E. Potter_
Defendant (s)

EXHIBIT 100

No._____

AFFIDAVIT
IN SUPPORT OF MOTION UNDER 28 U.S.C. § 1915
FOR APPOINTMENT OF ATTORNEY
AND
AUTHORIZATION TO COMMENCE SUIT
WITHOUT PREPAYMENT OF FILING FEE

(PRINT OR TYPE)

City of _Memphis_____, _Shelby_____County

I, THE UNDERSIGNED, BEING FIRST DULY SWORN, DEPOSE AND SAY THAT
IN SUPPORT OF MY APPLICATION FOR APPOINTMENT OF COUNSEL AND TO
PROCEED IN FORMA PAUPERIS I STATE THAT:

    I AM UNABLE TO PAY THE COSTS OF SAID PROCEEDINGS OR TO GIVE
SECURITY THEREFOR;

    I BELIEVE I AM ENTITLED TO REDRESS AS SHOWN BY THE ATTACHED
COMPLAINT.

I.    Efforts to Retain Counsel

    I further swear and affirm that I have made a reasonable effort to retain an attorney as
indicated by the following list of attorneys who I contacted, but who would not take my
case for the reasons indicated:

| NAME & ADDRESS ATTORNEY CONTACTED | DATE CONTACTED | REASON FOR REFUSING CASE |
|---|---|---|
| Arnold V. Lindsey JR. 100 North Main Bldg. #2323 | 10/09/2007 | Does not handle Postal EEO Cases |
| Tonya Cherise Saafir 100 North Main Bldg #2601 | 10/09/2007 | Does not handle Postal EEO Cases |
| Felix H. Bean III 100 North Main Bldg #3201 | 10/16/2007 | Does not handle Postal EEO Cases anymore |

EXHIBIT 100

II    Financial Status

I further swear that the responses that I have made to the questions below relating to my ability to pay the cost of prosecuting this action are true.

1.    MARITAL STATUS:

A.    SINGLE_MARRIED_SEPARATED_DIVORCED ✓ If separated or divorced, are you paying any support or any form of maintenance? YES___ NO ✓

B.    Dependents: WIFE ___ #CHILDREN ___ # OTHERS ___ AND RELATIONSHIP___

The names and ages of my children living at home are:

Name_____ N/A _____Age____
Name_____Age____
Name_____Age____
Name_____Age____
Name_____Age____

2.    Residence Address–Street: 5000 Lochinvar

City Memphis , State TN Zip Code 38116 Phone # 901-396-9884

3.    A.    If employed at present, complete the following:

Employer United States Postal Service
Employer's Address 3300 Jet Cove Suite 10
Employer's Phone 901-795-5756 How long employed? 21 years

Income: Monthly $ 1896.38  OR Weekly $ ___
What is the nature of your job? Small Parcel Bundle Sorter (SPBS) machine operator – Keying mail by zips.

B.    If unemployed at present, complete the following:
I have been unemployed since the ___ day of _____, 20 ___. The name of my last employer was _____. The address is ____

_____. The phone # is _____. The last salary or wages I received was $ _____ per week.

C.    If spouse employed at present, complete the following:
Employer_____
How long employed? ___ Income: Monthly $ ___ OR Weekly $___

What is the nature of your job?_____

D.    If on welfare or receiving unemployment benefits, please complete the following:

I have been on welfare or relief since the ___ day of _____, 20___

EXHIBIT 100

I am receiving $ _____ per week ___ month ___ for myself and family of _____.

4.   Financial Status:

A.   Owner of Real Property:  Yes _____ No ___✓___
   1)   Description _____
   2)   Address _____
   3)   In whose name _____
   4)   Estimated value $ _____ Total amount owed $ _____
   Owed to _____
   Annual income from property: $ _____

B.   Other property:
   1)   Automobile:  Make **ACURA** Model **TL (HONDA)** Year **2004**
        In whose name registered? **Sherry V. Shaw**
        Present value $ **20,000.00** Amount owed $ **19,680.00**

   2)   Cash on hand? $ **111.00** Total Cash in Banks, Credit Unions, or
        Financial institutions: $ **400.00**
        Name of Bank or financial institution:
        **Postal Employees Credit Union**
        **Bank of America**
        _____
        _____
        _____

C.   Obligations (per month):
   1)   Rent                                          $ _____
   2)   Mortgage payment                              $ **700.49**
   3)   Total Utility Bill                            $ **178.00/230.0**
   4)   Phone Bill                                    $ **137.00**
   5)   Car payments                                  $ **735.97**
   6)   Car insurance                                 $ **67.00**
   7)   Other insurance                               $ **129.00**
   8)   Retail merchants
        Please list:
        **Dillard's**                                 $ **100.00**
        **Macy's**                                    $ **60.00**
        _____                              $ _____
   9)   Other Creditors
        Please list:
        **Master Cards**                              $ **550.00**
        **Visa**                                      $ **70.00**
        **Master Card Loan**                          $ **250.64**
   10)  Alimony, maintenance, or child support under divorce decree or
        separation agreement                          $ _____
   11)  Food and groceries                            $ **200.00**
   12)  Clothes                                       $ **100.00**

EXHIBIT 100

13)   Total amounts owed to doctors, hospitals, or lawyers
       Please list:

       Felix H. Bean, III                                          Balance
                                                                   $Unknown
       _____                        $ —
       _____                        $ —

TOTAL AMOUNT OF MONTHLY OBLIGATIONS:

D.     Other information related to financial status, including but not limited to stocks,
       bonds, savings bonds, or interests in trusts, whether owned or jointly owned
       Please list:

       Thrift Savings Plan Loan                                    $257.16
       Thrift Savings Retirement Contribution                      $374.00
       _____                        $ —

I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct and submitted to persuade the Court to enter an order under 28 U.S.C. § 1915,
permitting me to file this case without prepayment of the filing fee, and appointing an attorney to
represent me in this case.

Executed this ___27th___ day of ___December___ _____20 07_____ .

_Sherry V. Shaw_____                          _Sherry V. Shaw_____
(Plaintiff's Signature)                        (PRINT PLAINTIFF'S NAME)

                                    _5000 Lochinvar-Memphis, TN 38116_
                                              (PRINT PLAINTIFF'S ADDRESS)
                                    _(901) 396-9884_____
                                              (PRINT PLAINTIFF'S TELEPHONE NUMBER)

EXHIBIT 200
IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| SHERRY SHAW, | X | |
| | X | |
| Plaintiff, | X | |
| | X | |
| vs. | X | No. 06-2897-B/V |
| | X | |
| JOHN E. POTTER, | X | |
| | X | |
| Defendant. | X | |
| | X | |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER DENYING APPOINTMENT OF COUNSEL
AND
ORDER TO ISSUE SERVICE OF PROCESS

Plaintiff Sherry Shaw filed a pro se employment discrimination complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, along with an application to proceed in forma pauperis. Based on the information contained in Plaintiff's affidavit, the motion to proceed in forma pauperis is GRANTED. The Clerk shall docket the case without prepayment of the filing fee and record the defendant as John E. Potter, Postmaster General.

Plaintiff has also filed a motion seeking appointment of counsel. Two statutes authorize the district court to request or appoint counsel for an indigent employment discrimination plaintiff. Twenty-eight U.S.C. § 1915(d) provides that the "court may request an attorney to represent any such person unable to employ counsel."[1] Similarly, under 42 U.S.C. § 2000e-5(f)(1), "upon application by the complainant and in such circumstances as

---

[1] However, "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989).

EXHIBIT 200

the court may deem just, the court may appoint an attorney." An employment discrimination plaintiff has no constitutional or statutory right to appointed counsel. Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir. 1972). Generally, a court will only appoint counsel in exceptional circumstances. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and her ability to present the claims. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir. 1985); Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989). At this stage of the proceedings, before the Court has had the opportunity to assess the strength of plaintiff's case, the Court is unable to conclude that plaintiff has satisfied that standard. Moreover, a review of this complaint indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel at this time. Plaintiff appears to understand the facts and applicable law sufficiently to represent herself. Furthermore, it does not appear from the affidavit

EXHIBIT 200

supporting her motion that she will be unable to obtain counsel on her own.  The motion is DENIED.

It is ORDERED that the Clerk shall issue process for Defendant Potter and deliver said process to the marshal for service.  Service shall be made on Defendant pursuant to Fed. R. Civ. P. 4(i)(1) and (2).  All costs of service shall be advanced by the United States.

It is ORDERED that Plaintiff shall serve a copy of every further document filed in this cause on the attorney for the defendant, or on the defendant if he has no attorney.  Plaintiff shall make a certificate of service on every document filed. Plaintiff shall promptly notify the Clerk of any change of address or whereabouts.  Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

IT IS SO ORDERED this 3rd day of August, 2007.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

EXHIBIT 300

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| SHERRY SHAW, | X<br>X<br>X | |
| Plaintiff, | X<br>X | |
| ·vs. | X<br>X | No. 06-2593-D/An |
| JOHN E. POTTER, | X<br>X | |
| Defendant. | X<br>X | |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER DENYING APPOINTMENT OF COUNSEL
AND
ORDER TO ISSUE SERVICE OF PROCESS

Plaintiff Sherry Shaw filed a pro se employment discrimination complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, along with an application to proceed in forma pauperis. Based on the information contained in ·Plaintiff's affidavit, the motion to proceed in forma pauperis is GRANTED. The Clerk shall docket the case without prepayment of the filing fee and record the defendant as John E. Potter, Postmaster General.

Plaintiff has also filed a motion seeking appointment of counsel. Two statutes authorize the district court to request or appoint counsel for an indigent employment discrimination plaintiff. Twenty-eight U.S.C. § 1915(d) provides that the "court may request an attorney to represent any such person unable to employ counsel."[1] Similarly, under 42 U.S.C. § 2000e-5(f)(1), "upon application by the complainant and in such circumstances as

---

[1] However, "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989).

EXHIBIT 300

the court may deem just, the court may appoint an attorney." An employment discrimination plaintiff has no constitutional or statutory right to appointed counsel. Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir. 1972). Generally, a court will only appoint counsel in exceptional circumstances. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and her ability to present the claims. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir. 1985); Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989). At this stage of the proceedings, before the Court has had the opportunity to assess the strength of plaintiff's case, the Court is unable to conclude that plaintiff has satisfied that standard. Moreover, a review of this complaint indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel at this time. Plaintiff appears to understand the facts and applicable law sufficiently to represent herself. Furthermore, it does not appear from the affidavit

EXHIBIT 300

supporting her motion that she will be unable to obtain counsel on her own. The motion is DENIED.

It is ORDERED that the Clerk shall issue process for Defendant Potter and deliver said process to the marshal for service. Service shall be made on Defendant pursuant to Fed. R. Civ. P. 4(i)(1) and (2). All costs of service shall be advanced by the United States.

It is ORDERED that Plaintiff shall serve a copy of every further document filed in this cause on the attorney for the defendant, or on the defendant if he has no attorney. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

**IT IS SO ORDERED** this 8th day of January, 2007.

s/Bernice Bouie Donald
BERNICE BOUIE DONALD
UNITED STATES DISTRICT COURT JUDGE

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EXHIBIT I

| | | |
|---|---|---|
| MICHAEL TATE, | X X X | |
| Plaintiff, | X X | |
| vs. | X X | No. 07-2595-JPM/sta |
| JOHN E. POTTER, | X X X | |
| Defendant. | X X X | |

ORDER GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS
ORDER DENYING APPOINTMENT OF COUNSEL
AND
ORDER TO ISSUE SERVICE OF PROCESS

Plaintiff Michael Tate filed a pro se employment discrimination complaint pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-16, along with an application to proceed in forma pauperis. Based on the information contained in Plaintiff's affidavit, the motion to proceed in forma pauperis is GRANTED. The Clerk shall docket the case without prepayment of the filing fee and record the defendant as John E. Potter, Postmaster General.

Plaintiff has also filed a motion seeking appointment of counsel. Two statutes authorize the district court to request or appoint counsel for an indigent employment discrimination plaintiff. Twenty-eight U.S.C. § 1915(d) provides that the "court may request an attorney to represent any such person unable to employ counsel."[1] Similarly, under 42 U.S.C. § 2000e-5(f)(1),

_____

[1] However, "§ 1915(d) does not authorize the federal courts to make coercive appointments of counsel" to represent indigent civil litigants. Mallard v. United States Dist. Court, 490 U.S. 296, 310 (1989).

EXHIBIT I

"upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney." An employment discrimination plaintiff has no constitutional or statutory right to appointed counsel. Moore v. Sunbeam Corp., 459 F.2d 811 (7th Cir. 1972). Generally, a court will only appoint counsel in exceptional circumstances. Willett v. Wells, 469 F. Supp. 748, 751 (E.D. Tenn. 1977). Although "no comprehensive definition of exceptional circumstances is practical," Branch v. Cole, 686 F.2d 264, 266 (5th Cir. 1982), courts resolve this issue through a fact-specific inquiry. Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir. 1986). Examining the pleadings and documents in the file, the Court analyzes the merits of the claims, the complexity of the case, the pro se litigant's prior efforts to retain counsel, and his ability to present the claims. Henry v. City of Detroit Manpower Dep't, 763 F.2d 757, 760 (6th Cir. 1985); Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985).

As a general rule, counsel should be appointed in civil cases only if a litigant has made "a threshold showing of some likelihood of merit." Cooper v. A. Sargenti Co., 877 F.2d 170, 174 (2d Cir. 1989). At this stage of the proceedings, before the Court has had the opportunity to assess the strength of Plaintiff's case, the Court is unable to conclude that Plaintiff has satisfied that standard. Moreover, a review of this complaint indicates that the case is not so complex that the Court should exercise its discretion to appoint counsel at this time. Plaintiff appears to understand the facts and applicable law sufficiently to represent himself. Furthermore, it does not appear from the affidavit

2

EXHIBIT I

supporting his motion that he will be unable to obtain counsel on his own. The motion is DENIED.

It is ORDERED that the Clerk shall issue process for Defendant Potter and deliver said process to the marshal for service. Service shall be made on Defendant pursuant to Fed. R. Civ. P. 4(i)(1) and (2). All costs of service shall be advanced by the United States.

It is ORDERED that Plaintiff shall serve a copy of every further document filed in this cause on the attorney for the defendant, or on the defendant if he has no attorney. Plaintiff shall make a certificate of service on every document filed. Plaintiff shall promptly notify the Clerk of any change of address or whereabouts. Failure to comply with these requirements, or any other order of the Court, may result in this case being dismissed without further notice.

IT IS SO ORDERED this 15th day of November, 2007.

s/ JON PHIPPS MCCALLA
UNITED STATES DISTRICT JUDGE

3

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

EXHIBIT I

Michael Tate
Plaintiff,

vs.

John E. Potter
Defendant (s)

No. _____

RECEIVED

AFFIDAVIT
IN SUPPORT OF MOTION UNDER 28 U.S.C. § 1915
FOR APPOINTMENT OF ATTORNEY
AND
AUTHORIZATION TO COMMENCE SUIT
WITHOUT PREPAYMENT OF FILING FEE

City of Memphis    (PRINT OR TYPE)    Shelby    County

I, THE UNDERSIGNED, BEING FIRST DULY SWORN, DEPOSE AND SAY THAT
IN SUPPORT OF MY APPLICATION FOR APPOINTMENT OF COUNSEL AND TO
PROCEED IN FORMA PAUPERIS I STATE THAT:

I AM UNABLE TO PAY THE COSTS OF SAID PROCEEDINGS OR TO GIVE
SECURITY THEREFOR;

I BELIEVE I AM ENTITLED TO REDRESS AS SHOWN BY THE ATTACHED
COMPLAINT.

I.    Efforts to Retain Counsel

I further swear and affirm that I have made a reasonable effort to retain an attorney as
indicated by the following list of attorneys who I contacted, but who would not take my
case for the reasons indicated:

| NAME & ADDRESS ATTORNEY CONTACTED | DATE CONTACTED | REASON FOR REFUSING CASE |
|---|---|---|
| John Canale 1545 Union Ave | 9-17-2007 | did not take postal cases |
| John R. Johnson 5299 Mendenhall Park Place | 9-17-2007 | did not take postal cases |
| Nahon Saharovich 488 South Mendenhall | 9-17-2007 | did not take postal cases |

**EXHIBIT I**

II.    Financial Status
I further swear that the responses that I have made to the questions below relating to my
ability to pay the cost of prosecuting this action are true.

1.    MARITAL STATUS:
    A.    SINGLE_MARRIED_SEPARATED_DIVORCED_ If separated or divorced,
        are you paying any support or any form of maintenance? YES___ NO___
    B.    Dependents:  WIFE___  #CHILDREN _1__  # OTHERS_____  AND
        RELATIONSHIP _daughter_____
    The names and ages of my children living at home are:

Name_____ N / A _____
Name_____Age____
Name_____Age____
Name_____Age____
Name_____Age____
                                                       Age____

2.    Residence Address-Street: _4958 Appleville_____

City _Memphis_____, State _TN_ Zip Code _38109_ Phone # _901795-1133_

3.    A.    If employed at present, complete the following:

        Employer_____ N / A _____
        Employer's
        Address_____
        Employer's Phone _____ How long employed?_____
        Income:  Monthly $_ N / A _____ OR Weekly $_____
        What is the nature of your job?_____

    B.    If unemployed at present, complete the following:
        I have been unemployed since the _27th_ day of _June_, 20_05_. The name
        of my last employer was _U.S. Postal Service_. The address is ____
        _3800 Jet Cove Ste1_
        _Memphis TN 38118_. The phone # is _(901)795-5752_. The last
        salary or wages I received was $_1,000.00_ per week.

    C.    If spouse employed at present, complete the following:
        Employer_____ N / A _____
        How long employed? _____ Income: Monthly $_____ OR Weekly $_____
        What is the nature of your job?_____

    D.    If on welfare or receiving unemployment benefits, please complete the following:

        I have been on welfare or relief since the _____ day of _____, 20____

I am receiving $ _____ per week ☐ month ☐ for myself and family of____

4.  Financial Status:

A.  Owner of Real Property:  Yes _____ No ✓      **EXHIBIT I**
    1)  Description _____
    2)  Address _____
    3)  In whose name _____
    4)  Estimated value $ _____ Total amount owed $ ____
    Owed to _____
    Annual income from property: $ _____

B.  Other property:
    1)  Automobile:  Make Hyndai Model XG350L Year 2005
        In whose name registered? Michael Tate
        Present value $ 10,000.00 Amount owed $ ____
    2)  Cash on hand? $ _____ Total Cash in Banks, Credit Unions, or
        Financial institutions: $ 100.00
        Name of Bank or financial institution:
        Postal Credit Union
        _____
        _____
        _____

C.  Obligations (per month):
    1)  Rent                                    $ 0.00
    2)  Mortgage payment                         $ 0.00
    3)  Total Utility Bill                       $ 0.00
    4)  Phone Bill                              $ 0.00
    5)  Car payments                            $ 00.00
    6)  Car insurance                           $ 60.00
    7)  Other insurance                         $ 20.00
    8)  Retail merchants
        Please list:
        _____         $ 0.00
        _____         $ 0.00
        _____         $ 0.00
    9)  Other Creditors
        Please list:
        _____         $ 0.00
        _____         $ 0.00
        _____         $ 0.00
    10) Alimony, maintenance, or child support under divorce decree or
        separation agreement                    $ 28,850.10 Arrears
    11) Food and groceries                       $ 115.00
    12) Clothes                                 $ .00

EXHIBIT I

13)    Total amounts owed to doctors, hospitals, or lawyers
       Please list:

       _____    $ _00.00_
       _____    $ _00.00_
       _____    $ _00.00_

TOTAL AMOUNT OF MONTHLY OBLIGATIONS:

D.     Other information related to financial status, including but not limited to stocks,
       bonds, savings bonds, or interests in trusts, whether owned or jointly owned
       Please list:

       _____    $ _00.00_
       _____    $ _00.00_
       _____    $ _00.00_

       I declare under penalty of perjury under the laws of the United States that the foregoing is
true and correct and submitted to persuade the Court to enter an order under 28 U.S.C. § 1915,
permitting me to file this case without prepayment of the filing fee, and appointing an attorney to
represent me in this case.

Executed this _17th_ day of _September_ 20 _07_.

_Michael Tate_
(Plaintiff's Signature)

                                        Michael Tate
                                        (PRINT PLAINTIFF'S NAME)
                                        4958 Appleville St
                                        Memphis TN 38109
                                        (PRINT PLAINTIFF'S ADDRESS)
                                        (900) 785-1733
                                        (PRINT PLAINTIFF'S TELEPHONE NUMBER)

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

RECEIVED

2007 SEP 18 PM 4: 10

CLERK U.S...
...



EXHIBIT I

MichAEL TAte

_____

_____

(Name of plaintiff or plaintiffs)

v.                                    CIVIL ACTION NO._____

John E. Potter
PostMASTER GeneRAL
United States PostAL Service
(Name of defendant or defendants)

### COMPLAINT UNDER TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

1. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for
employment discrimination. Jurisdiction is specifically conferred on the Court by
42 U.S.C. §2000e-5. Equitable and other relief are also sought under 42 U.S.C. §2000e-5(g).

2. Plaintiff_____MichAEL TAte_____
                        (name of plaintiff)

is a citizen of the United States and resides at__4958 Appleville Street_____
                                                              (street address)

Memphis            Shelby                      TN
(city)                  (country)                  (state)

38109                            901 785-1733
(zip code)                          (telephone number)

EXHIBIT I

3. Defendant    John E. Potter
(defendant's name)

lives at, or its business is located at   3300 Jet Cove Memphis, TN

38118
(street address)

4. Plaintiff sought employment from the defendant or was employed by the defendant at

3300 Jet Cove Suite 1D
(street address)

Memphis        Shelby        TN        38118
(city)            (country)        (state)        (zip code)

5. Defendant discriminated against plaintiff in the manner indicated in paragraph 9 of
this complaint on or about_____

            (day)        (month)        (year)

6. Defendant filed charges against the defendant with the Tennessee Fair Employment
Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this
complaint on or about_____

            (day)        (month)        (year)

7. Plaintiff filed charges against the defendant with the Equal Employment Opportunity
Commission charging defendant with the acts of discrimination indicated in paragraph 9 of this
complaint on or about   4th        May        2007
            (day)        (month)        (year)

8. The Equal Employment Opportunity Commission issued a Notice of Right to Sue,
which was received by plaintiff on   19th June 2007. (Attach a copy of the notice to
            (day) (month) (year)
this complaint.)

9. Because of plaintiff's  (1) ___ race, (2) ___ color, (3) ___ sex, (4) ___ religion,
(5)___ national origin, defendant

        (a) ____ failed to employ plaintiff.

        (b) _✓_ terminated plaintiff's employment.

        (c) ____ failed to promote plaintiff.

        (d) failed to allow me a fair trial/due process
refused family medical leave coverage and
falsified official documents, failed to terminate
male/white employee Bryan Sullins when he threatened
employees.

**EXHIBIT I**

10. The circumstances under which defendant discriminated against plaintiff we follows: *In an effort to justify termination of my employment for extended absences, Acting Supervisor Pamela Young falsified statements to Postal Officials accusing me of threatening her and posing a threat to other employees - all of which is uncorroborated. Management has provided no evidence that I threatened Ms. Young or other employees - there is however, an abundance of evidence that male white employee Bryan Sullins threatened a group of employees and management took no action against him. Management also discriminated against me when it disregarded expert documentation on my medical condition, causing my absences from work, disallowed my condition to be protected under the Family Medical Leave Act, denied me due process, and falsified documents to reflect justification of their terminating my employment.*

11. The acts set forth in paragraph 9 of this complaint

    (a) \_\_\_\_ are still being committed by defendant.

    (b) \_\_\_\_ are no longer being committed by defendant.

    (c) ✓ may still be being committed by defendant.

12. Please attach to this complaint a copy of the charges filed with the Equal Employment Opportunity Commission, which are submitted as a brief statement of the facts supporting this complaint.

    WHEREFORE, Plaintiff prays that the Court grant the following relief to the plaintiff:

    (a) \_\_\_\_ Defendant be directed to employ plaintiff, or

    (b) ✓ Defendant be directed to re-employ plaintiff, or

    (c) \_\_\_\_ Defendant be directed to promote plaintiff, or;

    (d) ✓ Defendant be directed to *PAY full backpay, overtime made whole, All applicable compensatory and punitive damages.*

and that the Court grant such other relief as may be appropriate, including injunctive orders, damages, costs and attorney's fees.

*Michael J Oto*
SIGNATURE OF PLAINTIFF

# U.S. District Court
## Western District of Tennessee (Memphis)
## CIVIL DOCKET FOR CASE #: 2:95-cv-02483-jsg

EXHIBIT X

Sims v. Rubin, et al
Assigned to: Julia S. Gibbons
Demand: $26,000
Cause: 28:1331 Fed. Question: Employment
Discrimination

Date Filed: 06/21/1995
Date Terminated: 03/25/1996
Jury Demand: None
Nature of Suit: 442 Civil
Rights: Jobs
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**Jean Arnold Sims**

represented by **Jean Arnold Sims**
1615 Pope Street
Memphis, TN 38108
901-323-1509
Fax: prose
PRO SE

V.

**Defendant**

**Robert E. Rubin**
*Secretary of Treasury*

represented by **Brian J. Quarles**
U.S. ATTORNEY'S OFFICE
Federal Building
167 N. Main St.
Ste. 800
Memphis, TN 38103
901-544-4231
Fax: 544-0854
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICE*

**Defendant**

**National Treasury
Employees Union, Chapter
98**
*Gail McKinney, President*

represented by **Cary P. Sklar**
NATIONAL TREASURY
EMPLOYEES UNION
901 E Street, N.W.

Suite 600
Washington, DC 20004
202-783-4444
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Gregory O'Duden**
NATIONAL TREASURY
EMPLOYEES UNION
901 E Street, N.W.
Suite 600
Washington, DC 20004
202-783-4444
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

EXHIBIT X

**Steven Flig**
NATIONAL TREASURY
EMPLOYEES UNION
2801 Buford Highway
Suite 430
Atlanta, GA 30329
404-728-1630
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Gail McKinney**
*President*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/21/1995 | 1 | COMPLAINT (SSH) (Entered: 06/26/1995) |
| 06/21/1995 | 2 | MOTION by plaintiff Jean Arnold Sims to proceed in forma pauperis (SSH) (Entered: 06/27/1995) |
| 06/21/1995 | 3 | MOTION/REQUEST by plaintiff Jean Arnold Sims for appointment of counsel and waiver of payment of fees (SSH (Entered: 06/27/1995) |
| 06/21/1995 | 4 | ORDER by Magistrate Diane K. Vescovo granting motion to proceed in forma pauperis [2-1]. The clerk shall not issue process or serve any papers until ordered by the court. The |

CM/ECF - U.S. District Court:tnwd                                    https://ecf.tnwd.uscourts.gov/cgi-bin/DktRpt

| | | EXHIBIT X |
|---|---|---|
| | | clerk shall immediately forwarded this file to the staff atty and mag. judge for completion of screening... (cc: all counsel) (SSH) (Entered: 06/27/1995) |
| 07/10/1995 | 5 | AMENDED COMPLAINT [1-1] by plaintiff Jean Arnold Sims; adding Gail McKinney (WBE) (Entered: 07/11/1995) |
| 07/13/1995 | 6 | AMENDED COMPLAINT [1-1] by plaintiff Jean Arnold Sims (SSH) (Entered: 07/14/1995) |
| 08/01/1995 | 7 | ORDER by Mag Judge Diane K. Vescovo for issuance of service of process for both dfts', to U.S. Marshall for service, by clerk, as directed; (copy handed mag. section) (cc: all counsel) (BAG) Modified on 08/01/1995 (Entered: 08/01/1995) |
| 08/08/1995 | 8 | ORDER by Chief Judge Julia S. Gibbons denying motion for appointment of counsel and waiver of payment of fees [3-1] (cc: all counsel) (EHG) (Entered: 08/08/1995) |
| 08/25/1995 | 9 | LETTER re: issuance of service pursuant to Magistrate's Order under 28 USC 1915(a), requesting copies of complai and summons forms for process of service; submitted by Clerk's Office. (BAG) (Entered: 08/25/1995) |
| 09/14/1995 | 10 | AFFIDAVIT of Jean A. Sims IN SUPPORT OF MOTION UNDE 28 USC 1915 FOR APPOINTMENT OF ATTORNEY AND AUTHORIZATION TO COMMENCE SUIT WITHOUT PREPAYMENT OF FILING FEE by Jean A. Sims; re [3-1], re [2-1] (BAG) (Entered: 09/18/1995) |
| 09/22/1995 | 11 | ORDER DENYING PLAINTIFF'S RENEWED MOTION FOR APPOINTMENT OF COUNSEL by Chief Judge Julia S. Gibbons; Court cannot assess merits of pltf's claim at this early point in litigation, renewed motion denied; court will consider renewal of motion closer to time of trial, when merits of claim can be more easily assessed. (cc: all couns (BAG) (Entered: 09/22/1995) |
| 10/31/1995 | | SUMMONS issued as to defendant Robert E. Rubin, defendant Gail McKinney (SSH) (Entered: 11/03/1995) |
| 11/21/1995 | 12 | RETURN OF SERVICE executed upon defendant Robert E. Rubin on 11/16/95, via certified mail # Z032053630; (BA (Entered: 11/24/1995) |

EXHIBIT X

| 12/07/1995 | 13 | ACCEPTANCE/ACKNOWLEDGEMENT OF SERVICE by defendant Gail McKinney on 11/28/95 (BAG) (Entered: 12/08/1995) |
| 12/08/1995 | 14 | RETURN OF SERVICE executed upon defendant NTEU, Chapter 98 on 12/6/95, via certified mail receipt #Z032 05 629; (BAG) (Entered: 12/08/1995) |
| 12/15/1995 | 15 | MOTION FOR PRO HAC VICE ADMISSION for attorney Steve Flig to appear pro hac vice, for dfts NTEU Chapter 98 (BAG (Entered: 12/18/1995) |
| 12/15/1995 | 16 | MOTION FOR PRO HAC VICE by defendant NTEU, Chapter 98 for attorney Cary P. Sklar to appear pro hac vice (BAG) (Entered: 12/18/1995) |
| 12/15/1995 | 17 | MOTION FOR PRO HAC VICE ADMISSION by defendant NTEU, Chapter 98 for attorney Gregory O'Duden to appear pro hac vice (BAG) (Entered: 12/18/1995) |
| 12/15/1995 | 18 | DEFENDANT NTEU CHAPTER 98'S MOTION TO DISMISS by defendant NTEU, Chapter 98 to dismiss pursuant to rules 12(b)(1) and 12(b)(6) of FRCP; (BAG) (Entered: 12/18/199 |
| 12/15/1995 | 19 | BRIEF FILED IN SUPPORT OF DEFENDANT NTEU CHAPTE 98'S MOTION TO DISMISS by defendant NTEU, Chapter 98 regarding [18-1] (BAG) (Entered: 12/18/1995) |
| 12/15/1995 | 20 | CERTIFICATE OF SERVICE by defendant NTEU, Chapter 9 w/attachments; (BAG) (Entered: 12/18/1995) |
| 12/19/1995 | 21 | ORDER GRANTING MOTION TO APPEAR PRO HAC VICE b Chief Judge Julia S. Gibbons granting motions for attorney Gregory O'Duden [17-1], Cary P. Sklar [16-1], and Steven Flig to appear pro hac vice, for dfts NTEU Chapter 98 [15 (cc all counsel) (BAG) (Entered: 12/20/1995) |
| 01/10/1996 | 22 | EXHIBITS; submitted by plaintiff Jean Sims; w/attachmen (BAG) (Entered: 01/11/1996) |
| 01/25/1996 | 23 | DEFENDANT SECRETARY'S MOTION TO DISMISS by defendant Robert E. Rubin to dismiss for lack of persona jurisdiction pursuant to Rule 12(b)(2) and (6) of FRCP; (BAG) (Entered: 01/29/1996) |
| 01/25/1996 | 24 | MEMORANDUM IN SUPPORT OF DEFENDANT SECRETA MOTION TO DISMISS by defendant Robert E. Rubin in support of motion to dismiss for lack of personal jurisdic |

EXHIBIT X

| | | |
|---|---|---|
| | | to Rule 12(b)(2) and (6) of FRCP; [23-1] (BAG) (Entered: 01/29/1996) |
| 02/02/1996 | 25 | MOTION FOR SUMMARY JUDGMENT by plaintiff Jean Arnold Sims for summary judgment (BAG) (Entered: 02/07/1996) |
| 02/02/1996 | 26 | MEMORANDUM OF LAW by plaintiff Jean Arnold Sims in support of motion for summary judgment [25-1]; w/attachments (BAG) (Entered: 02/07/1996) |
| 02/06/1996 | 27 | ORDER TO SHOW CAUSE: by Chief Judge Julia S. Gibbons; Pltf ordered to show cause within 10 days from the date of this order why dft's motion should not be granted. Failure t respond may result in the granting of dft's motion for dismissal [18-1]; (cc: all counsel) (BAG) (Entered: 02/07/1996) |
| 02/09/1996 | 28 | CERTIFICATE OF SERVICE by plaintiff Jean Arnold Sims (BAG) (Entered: 02/15/1996) |
| 02/15/1996 | 29 | RESPONSE TO ORDER TO SHOW CAUSE by plaintiff Jean Arnold Sims to [27-1]; w/attachments (BAG) (Entered: 02/15/1996) |
| 02/21/1996 | 30 | AMENDED MEMORANDUM OF LAW by plaintiff Jean Arnol Sims to [26-1] (BAG) (Entered: 02/21/1996) |
| 02/23/1996 | 31 | DEFENDANT NTEU CHAPTER 98's MOTION TO CONTINUE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT by defendant NTEU, Chapter 98 to continue the summary judgment motion of pltf until after ruling on motion to dismiss. (BAG) (Entered: 02/26/1996) |
| 02/29/1996 | 32 | MOTION FOR JUDGMENT BY DEFAULT by plaintiff Jean Arnold Sims for default judgment against Robert E. Rubin (BAG) (Entered: 03/04/1996) |
| 03/05/1996 | 33 | ORDER denying motion for default judgment against Rob E. Rubin [32-1]; Records indicate that a dft filed a motion dismiss 1/25/96, in compliance with FRCP 12. (cc: all counsel) (BAG) Modified on 03/07/1996 (Entered: 03/05/1996) |
| 03/22/1996 | 35 | SETTING LETTER: Scheduling Conference set for 4/24/96 9:00, before Judge Gibbons; (BAG) (Entered: 03/25/1996) |
| 03/25/1996 | 34 | ORDER GRANTING DEFENDANT'S NTEU'S MOTION TO DISMISS AND GRANTING DEFENDANT SECRETARY'S |

EXHIBIT X

| | | |
|---|---|---|
| | | MOTION TO DISMISS by Chief Judge Julia S. Gibbons granting motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) and (6) of FRCP; [23-1], granting motion to dismiss pursuant to rules 12(b)(1) and 12(b)(6) of FRCP; [18-1] dismissing case, as pltf engaged in a negotiated grievance procedure, her lawsuit in this court is barred. (cc: all counsel) (BAG) (Entered: 03/25/1996) |
| 03/27/1996 | 36 | JUDGMENT IN A CIVIL CASE: by Chief Judge Julia S. Gibbons In accordance with the provisions as set forth in the Order Granting Defendant NTEU'S Motion to Dismiss and Granting Defendant Secretary's Motion to Dismiss entered 3/25/96, this case is hereby DISMISSED. (cc: all counsel) (BAG) (Entered: 03/27/1996) |
| 04/24/1996 | 37 | AMENDED MOTION FOR JUDGMENT BY DEFAULT by plaintiff Jean Arnold Sims to [32-1] (BAG) (Entered: 04/24/1996) |
| 04/24/1996 | 38 | AMENDED RESPONSE TO ORDER TO SHOW CAUSE by plaintiff Jean Arnold Sims to [29-1] (BAG) (Entered: 04/24/1996) |
| 04/29/1996 | 39 | ORDER by Chief Judge Julia S. Gibbons finding the amend [38-1] moot., finding the amend [37-1] moot.; It is apparent to the court that due to some error, pltf is unaware that this case was dismissed 3/25/96; Clerk ORDERED to serve a cop of the 3/5/96 order denying request for default judgment, the 3/25/96 order granting motions to dismiss of dfts' and the 3/27/97 order of judgment, on pltf at the address from which most recent filings were sent: In accordance with previous orders of this court, pltf's instant motions are moot and are hereby denied. (cc: all counsel) (BAG) (Entered: 04/29/1996) |

EXHIBIT X

IN THE UNITED STATES DISTRICT COURT FILED BY _____ D.C.
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION                    96 MAR 25 AM 7: 07

JEAN ARNOLD SIMS,                          ROBERT R. DI TROLIO
                                           CLERK U.S. DIST. CT.
        Plaintiff,                         W.D. OF TENNESSEE

VS.                                        No.  95-2483 GA

ROBERT E. RUBIN,
Secretary of the Treasury;
and NTEU CHAPTER 98,

        Defendants.

---

ORDER GRANTING DEFENDANT NTEU'S MOTION TO DISMISS
AND GRANTING DEFENDANT SECRETARY'S MOTION TO DISMISS

---

Before the court are the motions to dismiss of defendants
the National Treasury Employees Union Chapter 98 ("NTEU") and
Robert E. Rubin, United States Secretary of the Treasury
("Secretary").  Plaintiff Jean A. Sims brings this action under
the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.,
and/or the Rehabilitation Act, 29 U.S.C. § 701-796i, against her
employer, the Internal Revenue Service ("IRS"), which is properly
represented in this suit by the named defendant Secretary.
Plaintiff apparently suffers from carpal tunnel syndrome and
alleges that she was wrongfully placed on an involuntary non-paid
furlough and was thus discriminated against on the basis of her
medical condition.  Plaintiff further alleges that her union,
NTEU, failed to properly represent her in a negotiated grievance
process challenging the propriety of the involuntary furlough.
Both defendants move to dismiss, and, for the following reasons,

This document entered on docket sheet in compliance with Rule 58 and/or
7. and FRCP on 3/25/96 _____ .


34

EXHIBIT X

the court grants both motions.[1]

In considering a Rule 12(b)(6) motion to dismiss, the court is limited to examining whether plaintiff's complaint sets forth allegations sufficient to make out the elements of a cause of action. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984). "A complaint should not be dismissed unless it appears beyond doubt that the [p]laintiff can prove no set of facts in support of his claim which would entitle him to relief." Craighead v. E.F. Hutton & Co., 899 F.2d 485, 489 (6th Cir. 1990), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court is also required to view the allegations in the light most favorable to the plaintiff. Id., quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

As alleged by plaintiff, the facts surrounding this dispute are as follows. Plaintiff is employed as a seasonal Tax Examiner by the United States Internal Revenue Service. In early February of 1991, while working in the 100% Review Unit, plaintiff experienced pain in her neck, shoulder, and arm, and missed several days of work. Plaintiff was diagnosed with carpal tunnel syndrome on February 19, 1991, and thereafter complained of difficulties at work and sought to file a Worker's Compensation claim for occupational disease.[2] Plaintiff was on an extended absence until May 10, 1991, at which point she was placed in non-

---

[1] Also pending are plaintiff's motion for summary judgment, and defendant NTEU's motion to continue plaintiff's motion until after disposition of its motion to dismiss. Since this order dismisses plaintiff's case, these pending motions are moot.

[2] This claim was apparently denied by the Department of Labor, Office of Worker's Compensation on February 19, 1992.

2

EXHIBIT X

pay status with other seasonal employees due to lack of work.

When plaintiff was recalled on July 7, 1991, she was
assigned to the Analyzation unit, which is the area in which she
has regularly worked since 1988.  Due to continued pain in her
wrist and the effects of pain medication, plaintiff missed
several more days of work, and upon her return, plaintiff
complained of the pain to her section chief and was given the
option of either accepting a downgrade to a clerical position
which would not require the painful repetitive hand movements, or
of submitting medical documentation outlining the type and amount
of work which she would be able to perform without significant
pain.  Plaintiff refused to accept the downgrade and, effective
July 26, 1991, was placed on involuntary furlough, pending the
transmittal of the requested medical documentation.

On January 22, 1992, plaintiff filed a grievance with NTEU
alleging that she was placed in involuntary furlough status in
violation of her employment contract.  Plaintiff's grievance was
forwarded to the NTEU attorney responsible for representing
employees in the Memphis IRS Service Center.  Plaintiff
apparently initially represented to NTEU that she did not want
their representation in any negotiations with the IRS, and later
failed to provide NTEU with pertinent medical information which
NTEU requested in order to be able to successfully pursue
plaintiff's complaint.

On June 8, 1992, plaintiff participated in a grievance
meeting, and the IRS offered, as full and final settlement, to
recall plaintiff to work effective June 1, 1992 and allow her to
work three and one-half months longer than other similarly-ranked

3

EXHIBIT X

seasonal employees. While plaintiff accepted the offer to return to work, she apparently rejected it as a full and final settlement of her grievance, and instead sought to be compensated for loss of pay, the cost of letters, postage, and transportation, damages related to stress, embarrassment, and fear, and punitive damages. Such relief was denied by the IRS as being outside the scope of the relief available in a negotiated grievance procedure. NTEU subsequently informed plaintiff that it would not invoke arbitration procedures on her behalf. Plaintiff apparently resumed her employment with the IRS on January 11, 1993.

On December 8, 1994, plaintiff sought the advice of a federal Equal Employment Opportunity ("EEO") counselor and on January 30, 1995, filed a formal EEO complaint. That complaint was denied by the Department of Treasury's regional EEO office on March 22, 1995 on the grounds that (1) plaintiff's pursuit of the EEO remedy was precluded by her previous participation in a negotiated grievance process; and (2) plaintiff, in any event, had failed to initiate the EEO process timely. Plaintiff did not appeal this decision to the Equal Employment Opportunity Commission ("EEOC"), but rather, on June 21, 1995, filed the instant lawsuit against both the IRS and NTEU, seeking compensation for lost wages and expenses. Both defendants move to dismiss, and the court will consider each motion in turn.

1. **Defendant NTEU's Motion to Dismiss.** Defendant NTEU is a locally chartered chapter of the National Treasury Employees Union, which is a national labor organization exclusively representing employees of the federal government in over a dozen

4

EXHIBIT X

federal agencies, including the IRS.  Pursuant to Title VII of

the Civil Service Reform Act, 5 U.S.C. § 7101 et seq., the

national organization has long been the certified exclusive

representative of approximately 100,000 IRS bargaining unit

employees.  At all times relevant to this action, plaintiff has

been a member of a bargaining unit represented by defendant NTEU.

Plaintiff's claim against NTEU here essentially alleges that

NTEU negligently misrepresented her in the grievance process

contesting the validity of the procedures used to involuntarily

furlough her without compensation from July 26, 1991 to January

11, 1993.  Plaintiff asserts that NTEU's representatives' actions

in instructing her to accept the furlough papers and in failing

to assist her in filing a formal grievance "allowed and promoted"

the allegedly wrongful actions of the IRS.[3]

Defendant NTEU argues that this claim should be dismissed

_____

[3] In her response to NTEU's motion to dismiss, filed subsequent
to this court's issuance of an order to show cause, plaintiff
characterizes her complaint against NTEU as follows:
> With the National Treasury Employees Union, specifically
> Chapter 98 being the designated representative of IRS
> employees, Jean A. Sims only sought the assistance and
> advice of NTEU.  She filed a grievance [i.e., this
> complaint] because she felt that the union steward, Rick
> Hogue's instructions to accept the furlough papers as
> well as those actions of the chapter president, Gail
> McKinney of not assisting her in filing a formal
> grievance allowed and promoted the the [sic] "Adverse
> Action" in terms of the contract between Internal Revenue
> Service and National Treasury Employees Union which left
> Jean A. Sims in non-work status without pay from July 26,
> 1991 to January 11, 1993 and was against the guidelines
> of the contract in such areas as sick leave, physician's
> statement requirements, job performance, and adverse
> action.

While plaintiff, who is proceeding pro se, nowhere clearly states
that she is alleging that NTEU breached its duty of fair
representation, it seems clear that the gravamen of her complaint
is such a claim.

5

EXHIBIT X

because a complaint for negligent representation by the union is
an "unfair labor practice" as defined by the Civil Service Reform
Act ("CSRA"), 5 U.S.C. §§ 7114, and may be prosecuted exclusively
by the Federal Labor Relations Authority ("FLRA"), an
administrative agency which is the federal sector counterpart to
the National Labor Relations Board ("NLRB"). This court agrees
and accordingly grants NTEU's motion to dismiss.

Title VII of the CSRA provides that a union which serves as
the exclusive representative of a federal employee bargaining
unit has a duty to represent all bargaining unit employees in a
fair manner, "without any discrimination and without regard to
labor organization membership." 5 U.S.C. § 7114(a)(1). This
provision forms the basis of the federal employee union's duty of
fair representation. <u>Karahalios v. Nat'l Fed'n of Fed.
Employees, Local 1263</u>, 489 U.S. 527, 531-32 (1989).

The CSRA also provides that a union's breach of this duty of
fair representation constitutes an unfair labor practice, 5
U.S.C. § 7116(b)(8), but mandates that the authority to prosecute
complaints of a breach of this duty lies exclusively with the
FLRA. 5 U.S.C. § 7118. In <u>Karahalios</u>, the United States Supreme
Court held that the FLRA's jurisdiction to enforce a union's duty
of fair representation is exclusive, and that Congress did not
intend to create a private cause of action to enforce that duty
in federal court. 489 U.S. at 532-36. <u>See</u> 5 U.S.C. § 7118.
<u>Accord</u> <u>Celli v. Shoell</u>, 40 F.3d 324, 327 (10th Cir. 1994); <u>Carter
v. Gibbs</u>, 909 F.2d 1452, 1456 (Fed. Cir.), <u>cert</u>. <u>denied</u>, 498 U.S.
811 (1990); <u>Montplaisir v. Leighton</u>, 875 F.2d 1-3 (1st Cir.

6

EXHIBIT X

1989).[4]  See also Local 3-689, Oil, Chemical & Atomic Int'l Union

v. Martin Marietta Energy Systems, Inc., Dept. of Energy, ___

F.3d ___, 1996 WL 78127, *6 n.5 (6th Cir. 1996) (noting that the

Supreme Court's decision in Karahalios precludes a private right

of action under the CSRA).

Plaintiff's complaint against NTEU accordingly is barred by

the doctrine of Karahalios.  See 489 U.S. at 536-37 ("To hold

that the district courts must entertain such cases in the first

instance would seriously undermine what we deem to be the

congressional scheme, namely to leave the enforcement of union

and agency duties under the Act to the General Counsel and the

FLRA and to confine the courts to the role given them under the

Act.").  Since, therefore, the court lacks subject matter

jurisdiction over plaintiff's complaint, defendant NTEU's motion

to dismiss is granted.

2.  **Defendant Secretary's Motion to Dismiss.**  Defendant

Robert Rubin, sued in his capacity as Secretary of the United

States Treasury, moves to dismiss this action on several grounds.

First, defendant Secretary argues that plaintiff failed to

properly effect service and thus failed to assert personal

jurisdiction over the IRS.  Second, defendant argues that since

plaintiff previously raised her complaint in a negotiated

grievance procedure, plaintiff has irrevocably elected not to

_____

[4] The CSRA provides recourse to federal court only in three
circumstances: (1) persons aggrieved by a final FLRA order, with
certain exceptions, may seek judicial review in the appropriate
court of appeals, 5 U.S.C. § 7123(a); (2) the FLRA may seek
judicial enforcement of its orders, 5 U.S.C. § 7123(b); and (3)
temporary injunctive relief is available to the FLRA to assist it
in the discharge of its duties, 5 U.S.C. § 7123(d).  See
Karahalios, 489 U.S. at 532.

7

EXHIBIT X

avail herself of statutory avenues of relief and accordingly, her suit in this court is precluded.  Third, defendant argues that plaintiff's discrimination claim is properly brought under 42 U.S.C. § 2000e-16, not under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., or the Rehabilitation Act, 29 U.S.C. § 794, and that plaintiff's failure to timely consult with an EEO counselor and file an administrative charge as required by that statute precludes her civil lawsuit.  As the court finds that defendant's second and third arguments are dispositive, the court does not reach defendant's service argument.

The disposition of defendant Secretary's motion to dismiss raises a number of complicated questions regarding the interplay between the Civil Service Reform Act, 5 U.S.C. § 7101 et seq., the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-16, and the Rehabilitation Act, 29 U.S.C. § 701-796i.[5]  After reviewing the applicable statutory and regulatory framework, the court concludes that plaintiff's instant suit is precluded because of

---

[5] Plaintiff's attempt to allege a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., fails as the ADA explicitly excludes the United States from its definition of covered "employers." 42 U.S.C. § 12111(5)(B)(i).  Accordingly, plaintiff's complaint of discrimination against the IRS is not cognizable in a claim brought under the ADA.  Instead, plaintiff's claim is properly brought under the Rehabilitation Act, 29 U.S.C. § 794, which incorporates the procedures provided in the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-16.  See Vinieratos v. United States Dept. of Air Force, 939 F.2d 762, 773 (9th Cir. 1991) (even though a federal employee alleges employment discrimination on the basis of disability in violation of the Rehabilitation Act, "Title VII [42 U.S.C. §§ 2000e-16] provides the exclusive channel by which such allegations may be heard in federal court.") (citing Boyd v. United States Postal Service, 752 F.2d 410, 413-14 (9th Cir. 1985)).  See generally Brown v. General Services Administration, 425 U.S. 820, 829-30 (1976) (Equal Employment Opportunity Act is the sole and exclusive remedy for civil rights claims of job discrimination by federal employees).

EXHIBIT X

her participation in a negotiated grievance process and her
failure to timely invoke the jurisdiction of the Department of
Treasury's EEO division following her refusal to accept the IRS's
final negotiated offer.

In passing the Civil Service Reform Act of 1978 ("CSRA"),
Congress hoped to increase the efficiency of the federal
government by allowing collective bargaining in the federal
workplace.  See Cornelius v. Nutt, 472 U.S. 648, 666 (1985)
(Marshall, J., dissenting); see also 5 U.S.C. § 7101(a)
(describing the findings and purposes of the Act).  The CSRA
allows union representatives to bargain with the federal agency
for the terms and conditions of workers' employment, see Bureau
of Alcohol, Tobacco and Firearms v. Federal Labor Relations
Auth., 464 U.S. 89, 107 (1983), the product of which is a
collective bargaining agreement that sets forth the procedures
for the settlement of grievances.  5 U.S.C. § 7121(a)(1).  The
procedures provided for by that agreement are generally the
"exclusive procedures for resolving grievances which fall within
its coverage."  5 U.S.C. § 7121(a)(1); see also Cornelius, 472
U.S. at 666 (citing 5 U.S.C. § 7106).  Due to Congress'
recognition that judicial tinkering with the intricate scheme set
up by the CSRA would result in a breakdown of that system, the
courts have been admonished to "leave the architecture of the
federal personnel system to Congress." Carter, 909 F.2d at 1456
(citing Volk v. Hobson, 866 F.2d 1398, 1403 (Fed. Cir.), cert.
denied, 490 U.S. 1092 (1989)).  Accordingly, judicial review of
adverse employment actions is often simply unavailable and
parties are bound by any decision rendered as a result of

9

EXHIBIT X

participation in the grievance procedures agreed to in collective

bargaining.  See generally American Fed. of Gov't Employees Local

2052 v. Reno, 992 F.2d 331 (D.C. Cir. 1993) (describing the

various procedures available under the CSRA).

Where, however, an aggrieved party, who would otherwise be

bound by the exclusivity of the negotiated grievance procedure,

seeks to raise a complaint of prohibited employment

discrimination under Title VII of the 1984 Civil Rights Act, 42

U.S.C. § 2000e et seq., the Rehabilitation Act, 29 U.S.C. § 794,

or the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 629 et seq.,[6] the policies of the CSRA are in conflict with

Congress's intention that the Equal Employment Opportunity

Commission ("EEOC") and its federal agency counterparts exercise

jurisdiction.  Accordingly, in 5 U.S.C. § 7121(d), Congress

created an exception to the exclusivity provision of section

7121(a)(1):

> (d)  An aggrieved employee affected by a prohibited
> personnel practice under section 2302(b)(1) of this
> title which also falls under the coverage of the
> negotiated grievance procedure may raise the matter
> under a statutory procedure or the negotiated
> procedure, but not both.  An employee shall be deemed
> to have exercised his option under this subsection to
> raise a matter under either a statutory procedure or
> the negotiated procedure at such time as the employee
> timely initiates an action under the applicable
> statutory procedure or timely files a grievance in

---

[6]  The CSRA, 5 U.S.C. § 2302(b)(1), imports the anti-discrimination laws of Title VII and the requirements of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., into federal workplaces.  The prohibitions of the Rehabilitation Act and the ADEA have equally been considered applicable.  See, e.g., Vinieratos v. U.S. Dept. of Air Force, 939 F.2d 762, 773 (9th Cir. 1991).  The procedural route for federal employees alleging claims of discrimination is via the Equal Employment Opportunity Act, 42 U.S.C. § 2000e-16; see Brown, 425 U.S. at 829-30.  See also infra note 8.

10

EXHIBIT X

writing, in accordance with the provisions of the parties' negotiated procedure, whichever event occurs first . . . .

5 U.S.C. § 7121(d).[7]  Therefore, once a plaintiff elects to pursue his discrimination claim in a negotiated grievance procedure, he may not thereafter invoke the statutory procedure established for discrimination complaints.  29 C.F.R. § 1614.301; Smith v. Kaldor, 869 F.2d 999, 1006 (6th Cir. 1989).  Accord Johnson v. Peterson, 996 F.2d 397, 398 (D.C. Cir. 1993); American Fed. of Gov't Employees, 992 F.2d at 332; Vinieratos v. U.S. Dept. of Air Force, 939 F.2d 762, 768 (9th Cir. 1991).[8]

Plaintiff here clearly elected to file a grievance under the

---

[7] Section 7121(d) deals with so-called "mixed case" complaints. A "mixed case" is a matter over which the Merit Systems Protection Board ("MSPB") would ultimately have jurisdiction on appeal from an agency decision or an arbitrator's decision, but which also raises issues of employment discrimination.  29 C.F.R. § 1613.402(a).  See also Vinieratos, 939 F.2d at 766; American Fed. of Gov't Employees, 992 F.2d at 332.  Here, plaintiff's case may not present a true "mixed case" because there is apparently some dispute as to whether the decision to place plaintiff on an involuntary furlough constituted an "adverse action" subject to ultimate review by MSPB. This dispute, however, does not affect the resolution of this motion to dismiss.  See Facha v. Cisneros, 1996 WL 102269, *11 n.5 & 12 (E.D. Pa. 1996) (evaluating plaintiff's complaint under a similar framework despite the fact that her complaint did "not represent a true 'mixed case' because the job action that HUD took against her was not sufficiently serious . . . to trigger review by the Merit Systems Protection Board," and granting the government's motion to dismiss for lack of subject matter jurisdiction).

[8] The applicable statutory framework requires that the plaintiff employee seek administrative remedies within the particular agency involved to redress his grievance before filing suit for unlawful employment discrimination.  See 42 U.S.C. § 2000e-16; Brown, 425 U.S. at 832 (interpreting Title VII).  Thus, plaintiffs seeking to invoke the statutory procedure are required to first consult with an EEO counselor in an informal effort and then, if unsuccessful, to file a formal charge of discrimination with the employing agency's EEO office, which is empowered by the EEOC to render a final decision on federal employee complaints. Once such a decision is rendered by the agency EEO office, the plaintiff has the right to appeal to the EEOC or to file suit in federal court.  See 29 C.F.R. 1613.281; 42 U.S.C. § 2000e-16(c).

EXHIBIT X

collective bargaining agreement.  Her handwritten letter, dated
January 22, 1992, constitutes such a grievance for the purposes
of the statute and thus effectively precludes her pursuit of the
statutory remedies which could be initiated through the filing of
an EEO complaint.  Plaintiff's election is "irrevocable," see
Vinieratos, 939 F.2d at 768, "irrespective of whether the agency
has informed the individual of the need to elect or of whether
the grievance has raised an issue of discrimination," so long as
the grievance involved the same "matter" as the plaintiff is
attempting to raise in the statutory process.  5 U.S.C.
§ 7121(d); 29 C.F.R. § 1614.301.

The word "matter" as used in this framework refers to the
"underlying employment action," and not to any legal
characterization of that action.  See Bonner v. Merit Systems
Protection Bd., 781 F.2d 202, 204-05 (Fed. Cir. 1986); Macy v.
Dalton, 853 F. Supp. 350, 353 (E.D. Cal. 1994).  Accordingly,
plaintiff's attempt to argue that her grievance challenged the
procedure of her involuntary furlough as opposed to the
discriminatory intent with which that procedure was invoked
fails; the "matter" at issue is the imposition of the furlough
and plaintiff raised that matter in her grievance.  See Macy, 853
F. Supp. at 354.

Plaintiff's case is complicated here by the fact that her
grievance was not taken into binding arbitration, which might
have been appealable to either the Merit Systems Protection Board
(which has the authority to refer an issue of discrimination to
the EEOC) or to the EEOC itself.  29 C.F.R. § 1614.401.  Since
plaintiff's union representative refused to take her claim to

12

EXHIBIT X

binding arbitration, plaintiff's negotiated offer was apparently

achieved as a result of a more informal process.[9]  Nonetheless,

the applicable statute clearly indicates that election occurs at

the time plaintiff files her written grievance, without regard to

how that process is concluded.  5 U.S.C. § 7121(d); see also

Vinieratos, 939 F.2d at 769; Jones v. Dept. of Health and Human

Servs., 622 F. Supp. 829, 830 (N.D. Ill. 1985).  Once plaintiff

begins the negotiated grievance process, she may not change her

mind and invoke the statutory EEO process.

Plaintiff does have the right to appeal a grievance decision

to the EEOC if there is an allegation of discrimination, see 29

C.F.R. § 1614.401(b).  Such an appeal must be taken, however,

"within 30 days of receipt of a decision." 29 C.F.R.

§ 1614.402(a).  Plaintiff here did not consult with an EEO

counselor until well over a year after the agency's negotiated

offer was made.[10]  Accordingly, she cannot avail herself of these

---

[9] An examination of plaintiff's exhibits reveals that NTEU determined not to refer her claim to binding arbitration due to plaintiff's failure to provide necessary medical information.

[10] Even had the court determined that plaintiff could invoke the statutory EEO process, plaintiff's failure to contact an agency EEO counselor within 45 days of the allegedly discriminatory action taken against her, see 29 C.F.R. § 1614.105(a)(1), bars her action in this court.  The 45-day deadline is construed as a statute of limitations, not as a jurisdictional prerequisite.  Johnson v. Runyon, 47 F.3d 911, 917 (7th Cir. 1995); Rennie v. Garrett, 896 F.2d 1057, 1062-63 (7th Cir. 1990).  While a plaintiff may seek an extension of this 45 day period from the agency by showing "that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits or for other reasons considered sufficient by the agency. . .", 29 C.F.R. § 1614.105(c), plaintiff here has failed to "articulate a reason why [s]he did not suspect discrimination" until after the 45-day period had run.  See Lewis

13

EXHIBIT X

appeal provisions.[11]  Since the CSRA encourages recognizing the
finality of decisions achieved as a result of participation in
the grievance procedures set out in collective bargaining
agreements, the statutory and regulatory framework governing the
settlement of discrimination complaints by federal employees
should be interpreted strictly to facilitate that policy.  As
plaintiff engaged in a negotiated grievance procedure, her
lawsuit in this court is barred.

   **Conclusion.**  For the reasons explained, the court grants
both NTEU's motion to dismiss and the Secretary's motion to
dismiss.

   IT IS SO ORDERED.


                         _Julia Smith Gibbons_
                         JULIA SMITH GIBBONS
                         UNITED STATES DISTRICT JUDGE


                         _March 21, 1996_
                         DATE

---

v. Runyon, 65 F.3d 175, 1995 WL 499440 **1 (9th Cir. 1995)
(dismissing a similarly situated claim), cert. denied, 116 S. Ct.
793 (1996).  See also Spence v. Straw, 54 F.3d 196, 202 (3d Cir.
1995) (recognizing that agency is given the power in the first
instance to determine whether to excuse a plaintiff's untimely
consultation).

[11] It appears from reading the regulation that plaintiff may
appeal to the EEOC only if "an issue of employment discrimination
was raised in a negotiated grievance procedure that permits such
issues to be raised."  29 C.F.R. § 1614.401(b).  Since, however,
plaintiff is barred from invoking the statutory EEO procedure even
when no discrimination is alleged in the written grievance so long
as the same "matter" is challenged, there appears to be some
ambiguity as to what avenue of relief is available to this
plaintiff who otherwise is not entitled to any appeal, since her
grievance was not submitted to arbitration.  Nonetheless, since
plaintiff failed to meet the timeliness requirement in any event,
this ambiguity need not be resolved.

                              14

EXHIBIT 400-1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

SHERRY V. SHAW,                    *
                                  *
    PLAINTIFF,          *
                                  *
v.                                *          CIVIL ACTION NUMBER
                                  *          06-CV-2593 BBD/An
                                  *
JOHN E. POTTER,                   *
POSTMASTER GENERAL,               *
UNITED STATES POSTAL SERVICE,     *
                                  *
    DEFENDANT.          *
                                  *

## DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

Defendant, by and through the United States Attorney for the Western District of Tennessee, hereby moves the Court to Dismiss certain claims raised by Plaintiff pursuant to Rule 12(b)(1), Fed.R.Civ.P. Defendant also moves the Court for summary judgment pursuant to Rule 56, Fed.R.Civ.P. In support of the instant motion, Defendant would respectfully show unto the Court that there is no dispute of material fact and Defendant is entitled to judgment as a matter of law. For these reasons and those more fully specified in the accompanying memorandum,

Defendant prays the Court to enter an order of dismissal and for summary judgment, dismissing this case in its entirety.

EXHIBIT 400-1

Respectfully Submitted,

LAWRENCE LAURENZI
UNITED STATES ATTORNEY

By: s/ harriett miller halmon
     HARRIETT MILLER. HALMON (TN # 05320)
     Assistant United States Attorney
     1026 Federal Office Building
     167 North Main Street
     Memphis, TN 38103-1898
     Phone: (901) 544-4231
     Facsimile: (901) 544-4230

OF COUNSEL:

SANDRA W. BOWENS
Attorney
U. S. Postal Service Law Department
225 North Humphreys Boulevard
Memphis, TN 38166-0170
(901) 747-7350
(901) 747-7371 Fax

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was mailed this 12th day of February

2009, to the following:

   Sherry V. Shaw
   5000 Lochinvar
   Memphis, TN 38116

              s/harriett miller halmon
              HARRIETT MILLER HALMON
              Assistant United States Attorney

EXHIBIT 500
UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

SHERRY V. SHAW,                          JUDGMENT IN A CIVIL CASE

v.

JOHN E. POTTER, POSTMASTER              NO. 06-2593, 06-2897,
GENERAL, UNITED STATES POSTAL               07-2617, 07-2856
SERVICE. CASE

DECISION BY COURT.  This action came to consideration before the
Court.  The issues have been considered and a decision has been
rendered.

IT IS SO ORDERED AND ADJUDGED that in accordance with the ORDER
GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR SUMMARY JUDGMENT
entered on June 16, 2009, this cause is hereby dismissed with
prejudice.

APPROVED:

s/Bernice B. Donald
UNITED STATES DISTRICT COURT

DATE: 06/16/2009

                                    THOMAS M. GOULD
                                    Clerk of Court


                                    s/Taffy Elchlepp
                                    (By)  Deputy Clerk